Thomas CONNOLLY, Appellant,

v.

SERVICE LLOYDS INSURANCE COMPANY, Appellee.

No. 09–94–037 CV.

Court of Appeals of Texas, Beaumont.

Submitted May 25, 1995.

Decided Sept. 7, 1995.

Publication Ordered Nov. 14, 1995.

Brett S. Thomas, Bush, Lewis, Ramsey & Roebuck, Beaumont, for appellant.

E. Thomas Bishop, Alexander N. Beard, E. Thomas Bishop, P.C., Dallas, James M. Harris, Jr., Holmes, Harris & Jeffrey, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a summary judgment rendered by the 136th Judicial District Court in and for Jefferson County, Texas, favoring Service Lloyds Insurance Company, appellee herein. Appellant, Mr. Thomas Connolly, filed the instant lawsuit in 1990, alleging various extra-contractual bad faith claims against Service Lloyds based upon appellee's alleged delay in authorizing a third back surgery pursuant to a workers' compensation compromise settlement agreement. Service Lloyds moved for summary judgment on Mr. Connolly's extra-contractual claims in 1991. In support of its motion for summary judgment, Service Lloyds set forth that its actions were based upon Mr. Connolly's objective medical test results and the opinions of two medical experts which indicated a third back surgery might not help Mr. Connolly and could make his condition worse. The trial court granted Service Lloyds' first motion for summary judgment.

Mr. Connolly appealed the trial court's summary judgment in 1992 to this Court. We subsequently reversed the trial court's summary judgment on the ground that the judgment encompassed claims not addressed in Service Lloyds' motion for summary judgment. On remand, and after further discovery, Service Lloyds filed another motion for summary judgment. This motion, the granting of which is presently before this Court, encompassed all of Connolly's claims. The trial court again concluded that Service Lloyds was entitled to summary judgment regarding all of Connolly's extra-contractual damage claims. The trial court entered a partial summary judgment favoring Service Lloyds on August 13, 1993.

The trial court subsequently scheduled Mr. Connolly's breach of contract claim for trial on January 3, 1994. Mr. Connolly then abandoned his breach of contract claim, the claim from which all of his extra-contractual bad faith claims stemmed, making the trial court's judgment on his bad faith claims final.

Factually, on or about September 18, 1985, Mr. Connolly allegedly sustained a back injury while employed at Premier Pontiac in Beaumont, Texas. Mr. Connolly sustained a previous injury to his back in 1984. Service Lloyds questioned whether Mr. Connolly was actually injured on the job or whether his physical problems originated while he was engaged in recreational activities at home over a Labor Day weekend.

Regardless of Service Lloyds' questioning the on-the-job nature of Mr. Connolly's injuries, on December 23, 1987, the parties entered into a release and settlement agreement whereby Mr. Connolly released Service Lloyds from any and all claims related in any way to his alleged on-the-job injury. Mr. Connolly was represented by counsel at the time of this settlement agreement. Pursuant to the judgment and release approved by the Court on January 12, 1988, Mr. Connolly recovered judgment against Service Lloyds in the sum of $27,713.44 in full satisfaction of any and all claims against appellee. The settlement provided that Service Lloyds was obligated to pay for Mr. Connolly's reasonable and necessary medical treatment as provided in Article 8306 Sections 7 and 7b of the Texas Workers' Compensation Act, from the date of judgment through January 12, 1991. The release provided in part:

... including any claim for gross negligence, negligence, intentional injury, willful injury and any claim based on allegations of "bad faith", whether founded in tort, contract, or based on any provision of the Insurance Code of Texas or the Texas Deceptive Trade Practices Act, including any claim of unfair dealing or unfair claim practices, as well as any other character or kind of action now held, owned or possessed by us, in whole or in part, which we may now or hereafter claim to hold or possess, on account of, growing out of, related to or concerning, whether directly or indirectly, proximately, or remotely, personal injuries alleged to have been sustained by claimant on September 18, 1985 in Jefferson County, Texas, ...

In addition to this settlement agreement, Mr. Connolly also executed an affidavit on December 23, 1987, providing in part:

I have filed suit against Service Lloyds Insurance Company for benefits under the Workers' Compensation Act, and I have now agreed to settle my suit, including my claim for compensation, for the total sum of * TWENTY-SEVEN THOUSAND, SEVEN HUNDRED THIRTEEN and 44/100 ($27,713.44) DOLLARS. I realize that when I make this settlement, I will not get any more money on account of this accident; however, the insurance company will pay or be liable for such reasonable and necessary medical expenses as may be incurred for a period of three (3) years from date of entry of final judgment which shall be performed as a result of my injury on or about September 18, 1985. No one has forced me to make this settlement, and I make it of my own free will, knowing that I could go ahead and try my lawsuit. I also understand that even though my physical or mental condition could change after I make this settlement, I will not get any more money.... * Plus past medical payments up to a maximum of $150.00 (upon bills submitted).

Approximately one month after the execution of the release and affidavit, Mr. Connolly underwent his first back surgery, a lumbar laminectomy, which Service Lloyds promptly authorized and paid. Some five months later, Mr. Connolly returned to Dr. Charles Clark, his treating surgeon, complaining of leg pain. Dr. Clark requested a post-operative CT scan, which revealed degenerative disc disease and a previous laminectomy defect at L4–5 and L5–S1. On January 4, 1989, Mr. Connolly underwent a second surgery, another laminectomy at L4–5, which was promptly authorized and paid for by Service Lloyds. Thereafter, a subsequent radiologist report revealed that Mr. Connolly had degenerative disc disease at L4–5 and L5–S1. Despite the findings of degenerative disc disease, Dr. Clark suggested another laminectomy operation may be needed.

Upon receiving Dr. Clark's report, Service Lloyds forwarded copies of Mr. Connolly's medical records to Dr. George W. Sibley, a board-certified orthopedist with over thirty years of experience, for a second opinion. On April 7, 1990, Dr. Sibley opined that a third surgery (lumbar laminectomy) would be of no benefit to Mr. Connolly in that his symptoms appeared to be the result of degenerative disc disease throughout the lumbar spine, rather than a neurological deficit.

On or about April 16, 1990, Service Lloyds was contacted by Mr. Connolly's new attorney. Upon receiving necessary permission and power of attorney from Mr. Connolly, Service Lloyds released Mr. Connolly's medical records to his attorney. On May 22, 1990, Service Lloyds conferred with Connolly's attorney about obtaining a third opinion from another doctor concerning the need for a third laminectomy procedure. The following day, Mr. Connolly's attorney agreed that a third opinion should be obtained, provided the doctor was chosen by Connolly's treating physician, Dr. Clark. Service Lloyds promptly consented to the attorney's request.

Dr. Clark chose Dr. David A. Baskin, of Houston, Texas, to render the third opinion. Dr. Baskin did not render an opinion until six weeks later, on July 3, 1990. In this report, Dr. Baskin concluded that "surgery may or may not help him [Connolly], and could make him worse." Dr. Baskin opined that surgery was "indicated," but cautioned he was not sure whether surgery would help Mr. Connolly because a third procedure typically has a lower yield, and because the MRI scan

suggested a significant degree of scarring. Dr. Baskin ultimately left the surgery decision to Dr. Clark and Mr. Connolly.

Within ten days of receiving Dr. Baskin's report, Service Lloyds informed Connolly's attorney that it would pay for the third surgery. The third surgery was performed August 27, 1990, and prompt payment was made by Service Lloyds. This third surgery did not cure Mr. Connolly's condition.

Appellant brings six points of error directed to the summary judgment entered by the trial court. The entirety of the order portion of the summary judgment is as follows:

> It is, therefore, ORDERED, ADJUDGED AND DECREED that the Plaintiff, Thomas Connolly, recover nothing of and from the Defendants on all of the claims and causes of action which he has asserted herein save and except his claim and cause of action for breach of contract. With respect to Thomas Connolly's claim and cause of action for breach of contract, Defendants' Motion for Summary Judgment is DENIED.

■ In the instant case, Service Lloyds moved for summary judgment on several grounds, including fulfillment of the duty of good faith and fair dealing as a matter of law, release, and judicial estoppel. The trial court's summary judgment does not specify the grounds upon which it was based. Accordingly, the trial court's summary judgment must be affirmed if any of the grounds advanced in support of it are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

■ A party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a (c); *Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546 (Tex.1985). In order for Service Lloyds to prevail on summary judgment, it must either: (1) disprove at least one element of plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 825 (Tex.App.—

Dallas 1992, writ denied). In deciding whether there is a disputed material fact issue which would preclude summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference in favor of the non-movant will be resolved in its favor. *Nixon,* 690 S.W.2d at 548–49.

Thus, in the case at hand, Service Lloyds was imposed with the burden at summary judgment level to conclusively prove the existence of a bona fide dispute regarding the appropriate medical management of Mr. Connolly's back condition.

On appeal, appellant Connolly attacks the granting of summary judgment on all grounds pled by appellee. Since the summary judgment does not specify the grounds upon which same was granted, we chose to affirm the trial court's summary judgment through the overruling of appellant's point of error four.

Point of error four contends that the trial court erred in granting a Motion for Summary Judgment for Service Lloyds Insurance Company against Thomas Connolly because whether the appellee acted reasonably in denying and delaying medical treatment to Mr. Connolly is a fact issue which should be determined by the trier of fact. Our overruling of this point of error requires a review of those cases involving an insurance carrier's basis for denial or delay of the payment of a claim.

■ The general and controlling standard required to prove bad faith in the denial or delay of payment of an insured's claim has been set forth in *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex. 1988). To establish a bad faith cause of action against the insurer, the insured must prove:

(1) [T]he absence of a reasonable basis for denying or delaying payment of the benefits of the policy, and

(2) [T]hat the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

*Aranda* also distinguishes the insurer's liability under the contract from its liability for

the tort of bad faith, stating that "carriers will maintain the right to deny invalid or questionable claims and will not be subject to [bad faith] liability for an erroneous denial of a claim." *Id.* Where the insurer had a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact-finder to be erroneous, the insurer is not liable for the tort of bad faith. *See Lyons v. Millers Casualty Ins. Co. of Texas,* 866 S.W.2d 597, 600 (Tex.1993).

■ In bad faith claims, the insured has the burden of proving a negative fact, i.e., that the insurer had no reasonable basis to deny or delay payment of the claim. *Id.* Where the insured merely presents evidence showing a bona fide dispute regarding the insurer's liability under an insurance contract, such showing does not rise to the level of bad faith. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994), citing *National Union Fire Ins. Co., v. Dominguez,* 873 S.W.2d 373, 376–377 (Tex.1994), and *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 780 S.W.2d 417, 426 (Tex.App.—Texarkana 1989), *aff'd,* 811 S.W.2d 552 (Tex.1991). A disagreement among experts as to whether the cause of the loss is one covered by the policy will not support a judgment for bad faith. *Moriel,* 879 S.W.2d at 18.

■ Since the proponent of a bad faith claim has the burden of proving that there existed no reasonable basis for the insurer's action, the insurer may satisfy its summary judgment burden by establishing the existence of a reasonable basis for denial or delay, thus negating an essential element of plaintiff's claim. *See Overstreet v. Home Indem. Co.,* 678 S.W.2d 916 (Tex.1984); *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex. 1976).

■ Each and every claim asserted by Mr. Connolly arose out of an alleged delay by Service Lloyds in authorizing a third back surgery. Service Lloyds at no time denied Mr. Connolly medical treatment. On the contrary, after fully investigating the need for a third lumbar laminectomy, Service Lloyds promptly agreed to pay for the back surgery. We think it appropriate to set forth certain undisputed facts concerning Service Lloyds investigation which unquestionably constitutes a reasonable basis for its conduct.

On January 26, 1988, Dr. Clark performed an initial operation on Mr. Connolly, a laminectomy, which was paid for by Service Lloyds. A post-operative CT scan and MRI revealed that Mr. Connolly had degenerative disc disease. On January 4, 1989, Mr. Connolly underwent a second back surgery, another laminectomy, that was paid for by Service Lloyds. On March 2, 1990 a radiology report revealed degenerative disc disease at L4–5 and L5–S1. On or about March 28, 1990, Service Lloyds received a report from Dr. Clark suggesting that a third back surgery, another laminectomy, might benefit Mr. Connolly. When Service Lloyds received notice that a third back surgery was contemplated, Service Lloyds immediately forwarded copies of Mr. Connolly's medical records to Dr. George W. Sibley, a board-certified orthopedist, to obtain Dr. Sibley's opinion as to the necessity for a third surgery. On April 7, 1990, Dr. Sibley opined that a third surgery (lumbar laminectomy) would not benefit Mr. Connolly in that his symptoms appeared to be the result of degenerative disc disease throughout the lumbar spine, rather than due to a neurological deficit. Even though Dr. Sibley concluded that a third surgery would not benefit Mr. Connolly, Service Lloyds continued to discuss Mr. Connolly's request for a third laminectomy with a representative in Mr. Connolly's attorney's office. As a result of this communication, Service Lloyds and Mr. Connolly's attorney agreed to have a third opinion rendered, provided that the doctor be chosen by Mr. Connolly's treating physician, Dr. Clark. Dr. Clark chose Dr. David A. Baskin, of Houston, Texas, to render the third opinion. Dr. Baskin did not examine Mr. Connolly until six weeks later, on or about July 3, 1990. Dr. Baskin's report revealed that "surgery may or may not help him [Connolly], and could make him worse." Service Lloyds received Dr. Baskin's report on or about July 17, 1990, and within ten days informed Mr. Connolly's attorney that Service Lloyds would agree to pay for the third

surgery. Mr. Connolly waited until August 27, 1990 to undergo his third back surgery. Service Lloyds paid for Mr. Connolly's third back surgery.

It is apparent to this Court, as it must have been to the trial court, that Mr. Connolly's bad faith allegations are premised in and upon differing opinions of experts. Medical doctors often disagree on the appropriate course of treatment for a patient. The simple fact that Dr. Clark recommended a third surgery does not constitute proof that the opinions of Dr. Sibley and Dr. Baskin were "unreasonable."

In the present case, upon thorough review of the record, this Court is at a loss in finding any merit whatsoever to Mr. Connolly's contention of bad faith denial or delay in the payment of his medical claims. To emphasize this point, under present law, Service Lloyds could have refused to pay for the third surgery without exposing itself to a bad faith judgment if it reasonably relied upon the medical opinions rendered by Dr. Sibley and Dr. Baskin.

Throughout appellee's brief, it discusses in detail the case of *State Farm Fire & Casualty Co. v. Simmons,* 857 S.W.2d 126 (Tex. App.—Beaumont 1993, writ denied, rehearing pending). Appellee's concern regarding the *Simmons* case is understandable even though *Simmons* has not been cited by appellant as authority. Obviously, appellee is concerned that this Court may jealously seek to protect our *Simmons* opinion by applying same to the present case. We view *Simmons* as narrowly restrictive to those cases where an insurer wholly disregards its obligation to its insured in pursuit of the insurer's self-serving interest. *Simmons* still pends before our Texas Supreme Court on Motion for Rehearing.

Were we, through vanity or otherwise, of mind to apply *Simmons* to the present case, which we are not, the "far better rule" suggested in *Simmons* would exonerate Service Lloyds. *Simmons,* 857 S.W.2d at 136. "Did the insurer [Service Lloyds] fulfill its duty to

its insured [Mr. Connolly] by pursuing a thorough, systematic, objective, fair and honest investigation of the claim prior to denying such claim?" *Id.* The evidence dictates in the affirmative. Service Lloyds did not deny nor delay any claim made by Connolly under the settlement agreement. Service Lloyds promptly agreed to pay and did pay for Connolly's third surgery. In *Simmons,* we dealt with unreasonable and self-serving conduct of an insurer. In the present case we deal with the converse. The settlement agreement did not provide that Mr. Connolly should receive "whatever" medical treatment he deemed appropriate. Service Lloyds agreed to pay for "reasonable and necessary medical expenses as may be incurred for a period of three (3) years...."

In *Packer v. Travelers Indem. Co.,* 881 S.W.2d 172 (Tex.App.—Houston [1st Dist.] 1994, no writ), a case factually similar to the present case, the Court affirmed the trial court's granting of summary judgment.[1] In *Packer,* claimant alleged to have sustained an on-the-job back injury. Claimant initially saw a doctor based on a referral from his employer's selected physician. This doctor recommended conservative treatment rather than surgery. Claimant then saw another doctor of his own choosing, who originally also recommended conservative treatment, but later recommended surgery. When claimant's doctor requested authorization for surgery, Travelers requested that claimant see another physician. In compliance with this request, claimant saw a third doctor who advised against surgery. Finally, by agreement of the parties, claimant was examined by another doctor, who also recommended against surgery. Despite these medical opinions, Travelers approved surgery approximately ten months after claimant's doctor had recommended surgery. Claimant subsequently filed a lawsuit against Travelers, alleging that the carrier's delay in authorizing back surgery constituted a breach of duty of good faith and fair dealing. Travelers moved for summary judgment on the grounds that

---

1. *Packer,* unlike the present case, did not involve an agreed judgment. This fact does not affect the manner in which an appellate court reviews unfair insurance practices under settlement agreements incorporated into judgment. *See Aetna Casualty and Surety Co. v. Marshall,* 724 S.W.2d 770 (Tex.1987).

the conflicting medical opinions established a bona fide dispute over the need for back surgery, thereby negating claimant's bad faith claim as a matter of law. The trial court granted Travelers' motion, finding that the existence of such a good faith controversy legally justified the delay in authorizing claimant's surgery and precluded a finding of bad faith as a matter of law. Claimant appealed, urging that the trial court erred in granting summary judgment because it disregarded claimant's evidence and failed to apply the correct legal standard. *Packer,* 881 S.W.2d at 173–174.

In resolving the issue, the Houston Court of Appeals enunciated the proper standards to be applied by trial courts in ruling on motions for summary judgment in bad faith cases. The Court cited *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 601 (Tex. 1993), for the proposition that "[t]he focus of the bad faith inquiry is on the reasonableness of the carrier's conduct in rejection (or delaying payment) of the claim." *Packer,* 881 S.W.2d at 174. The Houston Court recognized that *Lyons* was a "no evidence" case, but nevertheless recognized that the Texas Supreme Court's analysis in that case "is properly applied in a summary judgment case because the quantum of evidence necessary to raise a fact issue is the same in both contexts." *Id.*

The *Packer* court determined that the summary judgment evidence (conflicting expert reports) demonstrated that a bona fide controversy existed regarding the need for back surgery, and that by relying on the conflicting reports, the carrier established its good faith as a matter of law. *Id.* at 176. Once the carrier established its entitlement to judgment as a matter of law, the burden shifted to claimant to demonstrate the existence of a genuine dispute concerning the reasonableness of the carrier's conduct. *Id.* When faced with this burden, the *Packer* claimant attempted to create a fact issue concerning bad faith, by attempting to show that the investigation by Travelers was "outcome oriented." *Id.* The Houston Court rejected claimant's argument, noting that Travelers had paid for the treatment by the claimant's doctor of choice and had simply insisted on another professional opinion before authorizing the surgery. *Id.* at 177.

The decision in *Packer* is directly applicable to the instant case and demonstrates that the trial court's summary judgment was proper. Like *Packer,* there existed opinions from doctors which suggested that Mr. Connolly's back surgery was neither reasonable nor necessary. Indeed, Dr. Baskin, the doctor chosen by Mr. Connolly's treating physician to render the "tie breaking" opinion, concluded that "surgery may or may not help him [Connolly], and could make him worse." Like *Packer,* Service Lloyds established that there existed a bona fide controversy concerning the necessity for the back surgery, and therefore was entitled to judgment as a matter of law. Once Service Lloyds established that there existed a reasonable basis for its delay in authorizing the back surgery, the burden shifted to Mr. Connolly to demonstrate a material fact issue concerning the reasonableness of Service Lloyds reliance on the conflicting medical opinions. Mr. Connolly failed in sustaining his burden. Mr. Connolly presented no evidence showing that the doctor's reports were not objective or that reliance on the reports was unreasonable. Mr. Connolly's evidence simply established that there existed a conflict of opinion between the doctors concerning the need for a third back surgery. Furthermore, and finally, Service Lloyds paid for the third surgery.

 Appellee requests that this Court tax all cost of the present litigation, both at trial level and appellate level, against appellant. We find that good cause exists for requiring appellant to pay all cost of the present appeal. Therefore, it is Ordered that appellant pay all cost of this appeal. Tex.R.App.P. 89.

We affirm the trial court's granting of summary judgment and overrule appellant's point of error four.

AFFIRMED.