**Rudy and Esther AVILA, Plaintiffs,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant.**

**CIV.A.No. SA–96CA0141PMA.**

United States District Court, W.D. Texas, San Antonio Division.

Jan. 19, 1999.

Robert W. Loree, Richard D. Woods, San Antonio, TX, for Plaintiffs.

Richard W. South, Wright & Greenhill, P.C., Austin, TX, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

MATHY, United States Magistrate Judge.

Before the Court are three dispositive motions filed by defendant in the instant case: (1) motion for partial summary judgment on plaintiffs' extra-contractual causes of action [1] and on their request for mental anguish and exemplary damages (hereinafter referred to as "Motion # 1"); [2] (2) motion for summary judgment on plaintiffs' common law and statutory fraud claims (hereinafter referred to as "Motion # 2"); [3] and (3) motion for summary judgment on plaintiffs' contract claim based on limitations (hereinafter referred as "Motion

---

1. State Farm's motion seeks to dispose of all common law and statutory claims grounded in bad faith. State Farm has not sought summary judgment on the Avilas' claim under TEX. INS. CODE ANN. art. 21.55 and that claim will remain in the suit. Thus, the Court hereby vacates an earlier Order (docket no. 126) to the extent it conflicts with this ruling.

2. Docket no. 179.

3. Docket no. 178.

# 3").[4] The Court has jurisdiction under 28 U.S.C. § 636(i) as the parties have consented to proceed before a Magistrate Judge for all matters in this case including trial and entry of judgment.[5] After careful consideration of the motions and respective responses and replies, the pleadings on file (including earlier summary judgment motions and responses) and the entire record in this matter, the Court is of the opinion that Motions # 1 & 2 should be *granted* and Motion # 3 should be *denied.* Upon entering of this Order, the remaining causes of action for jury trial are: breach of contract and violations of Article 21.55 of the Texas Insurance Code.

## I. *JURISDICTION*

The Court has original and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1332 & 1367, respectively.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

The Avilas brought this suit in 1996 to recover damages allegedly caused to their family residence by leaks from deteriorated sewer lines and/or minor earth movement that resulted in cracks in the structure's foundation, as well as cosmetic damage. The Avilas filed a claim with their insurance company, State Farm Fire & Casualty Company ("State Farm"), under their homeowners insurance policy.[6] After investigating the matter, State Farm denied coverage and refused to pay the claim. Plaintiffs' third amended complaint[7] raises several causes of action: breach of contract; violations of the Tex. Ins. Code Ann. art 21.55 §§ 3 & 6 (Vernon 1981 & Supp.1999); violations of the Tex. Ins. Code Ann. art 21.21 (Vernon 1981 & Supp.1999); violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.46 & 17.50(a)(2–4) (Vernon 1987 & Supp. Pamphlet 1999); breach of the common law and statutory duties of good faith and fair dealing; common law and statutory fraud (or misrepresentation), and request for mental anguish damages.

In turn, State Farm has asserted several affirmative defenses to this suit[8] including: its denial of plaintiffs' claim was based on relevant policy exclusions which precluded coverage for plaintiffs' damages; a *bona fide* factual dispute existed as to coverage in this case (*i.e.,* whether the damage to the plaintiffs' residence resulted from an excluded cause); its liability was not reasonably clear when it denied plaintiffs' claim; plaintiffs' cause of action for breach of contract fails as a matter of law because it is barred by limitations and that plaintiffs' common law and statutory fraud (or misrepresentation) claims are not supported by the facts of the case.

During the pendency of this suit, state and federal courts have inconsistently interpreted the law regarding a Texas insurance company's duty to pay for foundation damages under the standard homeowners' insurance policy at issue in this case and known as the Texas Homeowners Policy—Form B. On June 30, 1997, the Fifth Circuit in *Sharp v. State Farm Fire Casualty Ins. Co.,* 115 F.3d 1258 (1997) held that the policy did not, as a matter of law, cover

4. Docket no. 193.

5. Docket no. 14.

6. The policy at issue in this case, Texas Homeowners Policy Form B No. 83–09–1089–7, became effective September 1, 1993

through September 1, 1994 (docket no. 179, Exhibit B at 2).

7. Docket no. 189.

8. Docket no. 190.

foundation damage.[9] On July 9, 1997, however, the Texas Supreme Court in *State Farm Lloyds v. Nicolau* affirmed the recovery by a homeowner for damages to the dwelling foundation caused by a plumbing leak.[10] In addition, on August 22, 1997, the Commissioner of Insurance for the State of Texas issued a bulletin to all property and casualty insurance companies in which the Commissioner explicitly disagreed with the decision of the Fifth Circuit in *Sharp;* and stated in detail the Department of Insurance's conclusion (in support of the insured) that the Texas Standard Homeowner's Policy does cover structural and cosmetic damage to a dwelling that results from a foundation shift caused by a plumbing leak beneath the house.[11] Some months following the issuance of the bulletin, a different Fifth Circuit panel from the one in *Sharp* certified the question on whether the exclusion in Subsection (h) of the 1991 Texas Standard Homeowner Policy—Form B excludes from coverage damage to a dwelling caused by a movement of its foundation

that was caused by an underground plumbing leak.[12] Consequently, on February 12, 1998, the Court stayed this case pending final resolution by the Texas Supreme Court on the certified question.[13] At the time of the stay, the Court had dismissed all of plaintiffs' extra-contractual causes of action.[14] The basis of the Order was the Fifth Circuit decision in *Sharp* which held that, as a matter of law, foundation damage caused by a minor earth movement was *not* a covered peril.[15] This Court reasoned that "absent coverage for foundation damage, claims for negligence, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices–Consumer Protection Act should be rejected if they arise out of that claim." [16] Based on this Order, the only remaining claim at the time of the stay was plaintiff's cause of action for "fraud arising out of an alleged overcharge for premiums." [17]

On July 3, 1998, the Texas Supreme Court held that, while the competing inter-

9. 115 F.3d 1258, 1260 (5th Cir.1997) (court affirmed the district court's decision granting summary judgment to State Farm because the policy issued to the plaintiffs unambiguously excluded coverage for damage to their house that resulted from a foundation shift caused by a subsurface plumbing leak).

10. 951 S.W.2d 444 (Tex.1997). The homeowner's policy in *Nicolau* was a version of the Texas Standard Homeowners Policy which was in use prior to the 1991 version involved in *Sharp* and here in this case. In addition, the policy in *Nicolau* contained an exclusion for losses caused by "settling, cracking, bulging, shrinkage, or expansion of foundation," and also contained an express exception that these exclusions do not apply "to losses caused by an accidental discharge, leakage or overflow of water from within a plumbing system." *Id.* at 448. Also, there was no dispute in *Nicolau* as to coverage.

11. Tex. Dep't of Ins. Commissioner's Bulletin No. B–0032–97 (August 22, 1997).

12. *Balandran v. Safeco Insurance Company of America,* 129 F.3d 747, 749 (5th Cir.1997).

13. Docket no. 167 at 2.

14. Docket no. 126 at 3.

15. In an earlier Order (docket no. 93), the Court granted in part defendant's summary judgment (docket no. 34) based on the district court's decision in *Sharp* (938 F.Supp. 395, 397 (W.D.Tex.1996)) which held that foundation damage caused by a plumbing leak was not a covered peril under the "accidental discharge" provision of the policy.

16. Docket no. 126 at 3.

17. *Id.* State Farm's original motion for summary judgment on fraud (docket no. 142) was *denied without prejudice* to refiling when the Court stayed the case (docket no. 167).

pretations of the policy by both the insured and the insurer are reasonable, the insured's interpretation must govern because the policy language is ambiguous.[18] On October 27, 1998, the Court lifted the stay in this case and amended its scheduling order.[19] The Court will now address the merits of State Farm's motions individually.

### III. SUMMARY JUDGMENT STANDARD

The applicable standard in deciding a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[20]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact.[21] A fact is material if it might affect the outcome of the lawsuit under the governing law.[22] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[23] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[24]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[25] The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[26] All evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party resisting the motion for summary judgment.[27] Thus, summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[28]

---

**18.** *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741–42 (Tex.1998).

**19.** Docket no. 173.

**20.** FED R.CIV P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**21.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**22.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994).

**23.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).

**24.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505.

**25.** *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548.

**26.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257, 106 S.Ct. 2505.

**27.** *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993).

**28.** See *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1187 (5th Cir.1991).

## IV. ARGUMENTS AND CONCLUSIONS OF LAW

**Motion # 1:** (a) Whether State Farm is entitled to summary judgment on the Avilas' common law and statutory bad faith claims?

State Farm argues it is entitled to summary judgment on plaintiffs' common law and statutory claims of bad faith because its liability to pay plaintiffs' foundation claim never became reasonably clear and because the undisputed evidence demonstrates a *bona fide* factual dispute as to whether a plumbing leak was the cause of plaintiffs' foundation damage. State Farm also claims that the existence of a legitimate dispute regarding the legal interpretation of the plaintiffs' homeowners policy warrants summary judgment on plaintiffs' claims of common law and statutory bad faith.

Plaintiffs in turn argue in their response [29] and supplemental response [30] that State Farm has breached its duty of good faith and fair dealing because it knew or should have known that its liability was reasonably clear when it denied payment of the claim. In particular, plaintiffs contend that State Farm is liable because: it did not perform a reasonable investigation of their claim; it relied on the report of a biased engineer, and it conducted an out-come-oriented investigation to deny payment of plaintiffs' foundation claim. With respect to State Farm's statutory liability, plaintiffs argue the summary judgment evidence creates a fact issue on whether State Farm has engaged in unconscionable conduct in violation of the DTPA and whether it violated the Texas Insurance Code.

### Good Faith and Fair Dealing Standard

■ In *Universe Life Insurance Co., v. Giles,*[31] the Texas Supreme Court revised the common law standard for establishing a breach of the duty of good faith and fair dealing to parallel the statutory bad faith standard. Under the new standard, the Avilas must prove that State Farm denied their claim and that it "knew or should have known that it was reasonably clear that the claim was covered."[32]

### State Farm's Liability Was Not "Reasonably Clear"

■ State Farm argues that it cannot be held liable for bad faith because the denial of the Avilas' claim was based on its reasonable interpretation that the homeowners policy at issue did not provide coverage for foundation claim caused by a plumbing leak.[33] The Texas Supreme Court's ruling in *Balandran* specifically held that this interpretation was reasonable.[34] Therefore, the Court agrees with State Farm that liability was not "reason-

---

29. Docket no. 199.

30. Docket no. 205.

31. 950 S.W.2d 48 (Tex.1997).

32. *Id.* at 54–55. *See also* TEX. INS. CODE. ANN. art. 21.21 § 4(10)(a)(ii) which lists as an unfair settlement practice the insurer's failure "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear." *Id.*

33. *See Provident Am. Ins. Co. v. Castaneda,* 988 S.W.2d 189, 1999 WL 2507, No. 96–0249, at *7 (Tex. Dec. 31, 1998) (whether an insurer acted in bad faith is determined by the facts in *existence at the time of denial* ).

34. 972 S.W.2d at 741–42 ("[W]e conclude that the exclusion repeal provision is subject to two reasonable interpretations, and is therefore ambiguous. *We are mindful of the Fifth Circuit's reasoning in Sharp, and we agree that it reflects one reasonable interpretation of the policy language.* However, the Balandrans' interpretation is also reasonable .... Because the Balandrans are the insureds, we adopt their interpretation as the

ably clear" at the time it denied the Avilas' claim.[35] Further, the Court is not convinced that the Department of Insurance's disagreement with *Sharp* undermines this analysis. According to the Supreme Court's ruling in *Balandran,* the position held in *Sharp* and the position sponsored by the Department of Insurance are both reasonable. Therefore, State Farm could not have acted unreasonably in denying the claim based on its interpretation of the policy.[36]

## A Bona Fide Coverage Dispute Does Not Constitute Bad Faith

 With respect to plaintiffs' allegations that State Farm acted unreasonably when it denied their claim, on the basis that it conducted an outcome-oriented investigation of the claim and it relied on a biased expert report, are insufficient to preclude summary judgment on the facts presented in this case. It is well-settled in Texas that evidence establishing only a *bona fide* coverage dispute, as in this case, does not prove a claim for bad faith.[37] Plaintiffs have not produced competent summary judgment evidence [38] that the engineering reports relied upon by State Farm were not objectively prepared or that State Farm's reliance on them was unreasonable, or any evidence from which it could be inferred that State Farm knew or should have known that it acted unreasonably in denying the Avilas' claim. Nevertheless, the Court will discuss the uncontroverted facts that are germane to plaintiffs' allegations.

The undisputed summary judgment evidence shows that the Avilas reported their

proper construction of the policy.") (emphasis added).

35. *See Oram v. State Farm Lloyds,* 977 S.W.2d 163 (Tex.App.—Austin 1998, no pet. h.) (court held that the insurer did not breach its statutory duty of good faith to effectuate prompt, fair, and equitable settlement of a claim when liability has become reasonably clear, in light of the Fifth Circuit's adoption of the insurer's construction of policy and the Texas Supreme Court's acknowledgment that such construction was reasonable); *Lawson v. Potomac Ins. Co.,* 1998 WL 641809, No. Civ. 3:98–CV–0692H, at *3–4 (N.D.Tex. Sept. 14, 1998) (court granted summary judgment on plaintiff's common law and statutory breach of the duty of good faith and fair dealing finding that defendant had a reasonable basis to deny coverage); and *Malone et al., v. State Farm Lloyds,* 96–CA–1041 (docket no. 77) (W.D.Tex. Dec. 10, 1998) (court granted defendant's summary judgment on plaintiffs' extra-contractual claims).

36. *See United States Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 269 (Tex.1997) (an insurer cannot be held liable for bad faith simply because it misinterprets a rule); *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex.1995) (stating that as long as the insurer has a reasonable basis to deny or delay payment of the claim, even if that basis is erroneous, the insurer is not liable for bad faith).

37. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex.1997); *Transportation Ins. Co., v. Moriel,* 879 S.W.2d 10, 17 (Tex. 1994).

38. Plaintiffs in their supplemental response to State Farm rely on an affidavit from their newly designated expert in which he states that he had lunch with Mr. Reaves and a State Farm employee, Mr. Sullivan, and that "Mr. Sullivan told us how he wanted engineer reports done and how he did not want engineer reports done. It was my impression and understanding that Mr. Sullivan and State Farm wanted (I) to hire engineers to provide favorable report to State Farm in which the engineer would find any reason to state that the plumbing leaks had not caused any damage to the house ..." (docket no. 205, Linehan's affidavit ¶ 5). Because this statement provides insufficient information regarding the facts upon which Mr. Linehan relied on for his "impression and understanding," at this juncture, the Court is unable to determine the evidentiary weight to give to this statement. Nevertheless, State Farm's motion to strike (docket no. 207, at 6 fn. 14) the affidavit is *denied.*

claim made the basis of this suit on December 27, 1993.[39] On December 30, 1993, State Farm's claim representative assigned to the case, sent the Avilas a letter acknowledging receipt of the claim and outlining the scope of the investigation.[40] After the claim representative inspected the property,[41] State Farm retained an independent plumbing company (Danco Plumbing Co.,) to conduct a leak detection test on the sewer and water lines of the property.[42] State Farm also retained an independent engineering company (GE Reaves Engineering) "to inspect the loss to the Premises and provide an opinion about whether the leak at the Premises caused or contributed to the structural damage noted at the Premises." [43] Reaves Engineering inspected the premises on at least two occasions and submitted a report to State Farm based on its inspection and Danco's plumbing report. The Reaves' report concluded that the foundation damage at plaintiffs' residence was not caused by a plumbing leak.[44] State Farm denied plaintiffs' claim based on its own investigation, the plumbing and the engineering assessments of the cause of the foundation damage, and the policy exclusions.[45]

■ Subsequent to the denial of the claim, plaintiffs' counsel submitted a report prepared by an engineer retained by them (Dabney) as well as a report on some soil samples prepared by a plumber also retained by them (Burch).[46] Upon receipt of this information, State Farm sent a letter to plaintiffs' counsel requesting a copy of Burch's complete soil report.[47] Plaintiffs' counsel did not respond to this request.[48] Even though State Farm's analysis of the reports submitted by plaintiffs found that they did not conflict with the Reaves' report, it nevertheless forwarded them to Mr. Reaves for his review.[49] Mr. Reaves determined that the reports, and in particular the one submitted by Dabney, did not contradict his findings which would warrant a revision to his original report.[50] Because the evidence demonstrates that Dabney's opinion was not in conflict with Reaves at the time the report was submitted to State Farm, the Court cannot conclude that State Farm had inadequate or inconsistent information prior to denying plaintiffs' claim or that it acted unreasonably [51] in relying on Reaves' report.[52] By making this finding, the Court adheres to

39. Docket no. 179, Exhibit B.

40. Docket no. 199, Exhibit C.

41. According to the affidavit submitted by the claim representative, as part of her inspection she "photographed damages, diagramed and scoped damages and obtained a recorded statement from Mr. Avila." (docket no. 179 at Exhibit B).

42. Docket no. 179, Exhibits B & B–1.

43. *Id.* at Exhibit B.

44. *Id.* at Exhibit D. This conclusion was based on his visual observations and his analysis of photographs of the affected area and the results of the plumbing soil tests performed by Danco. *Id.* & Exhibit B–2.

45. Docket no. 179 at Exhibit B.

46. Docket no. 179, Exhibits C & C–2.

47. *Id.* & Exhibit C–3.

48. *Id.* at Exhibit C.

49. *Id.* at Exhibit C–4.

50. *Id.* & Exhibit C–5.

51. The inquiry of whether an insurer acted in "bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *See Lyons v. Millers Cas. Ins. Co.,* 866 S.W.2d 597, 601 (Tex.1993).

52. The Court finds that the facts of this case are distinguishable from the cases relied by plaintiffs. For example, in *Nicolau,* there was evidence of no reasonable basis to deny plain-

the line of cases which have held that evidence showing only a *bona fide* coverage dispute simply does not demonstrate an unreasonable basis for denying a claim.[53]

Therefore, as a matter of law, State Farm did not violate the common law duty of good faith and fair dealing and it did not engage in statutory bad faith under the Texas Insurance Code.[54] Because the statutory and common law standards are now the same, a finding that there is no common law violation as a matter of law also eliminates the statutory claims alleged by plaintiffs in this case.[55]

**Motion # 1:** (b) Whether the Avilas have brought forth direct evidence entitling them to an award of mental anguish damages?

State Farm seeks summary judgment on plaintiffs' request for mental anguish on the basis that they have failed to produce evidence entitling them to an award of mental anguish damages. Based on the Court's ruling below, plaintiffs have failed to raise a genuine issue of material fact precluding summary judgment on their common law and statutory fraud (or misrepresentation) claims.[56] Moreover, plaintiffs have not established, by facts or

---

tiffs' claim because the insurer had either relied on an expert's report that the carrier knew "was not objectively prepared," or because "the insurer's reliance on the report was unreasonable." 951 S.W.2d at 448. Likewise, in *State Fire & Cas. Co., v. Simmons*, 963 S.W.2d 42, 43 (Tex.1998), the testimony of the insurer's own experts, as well as its own internal documents, established the deficiencies in the company's review of the plaintiffs' claim (*i.e.*, the plaintiffs' fire loss claim was immediately deemed "suspicious;" and the insurer failed to investigate the possibility of other potential suspects that might have started the fire); and in *State Farm Lloyds v. Johns*, 1998 WL 548887, No. 05–96–01039–CV, at *3–4, (Tex. App—Dallas Aug. 31, 1998, no pet. h.), the insured submitted to her insurance company a conflicting expert opinion on the cause of her foundation damage and without further investigating the conflicting opinions rendered by the plaintiff s' expert and the company's expert, the company decided to nevertheless deny her claim. No such evidence of bad faith is present in this case.

**53.** *Nicolau,* 951 S.W.2d at 448; *Moriel,* 879 S.W.2d at 17; *National Union Fire Insurance Co., v. Dominguez,* 873 S.W.2d 373, 376–77 (Tex.1994); *Connolly v. Service Lloyds Ins. Co.,* 910 S.W.2d 557, 563 (Tex.App.—Beaumont 1995, no writ) (holding that the carrier established its good faith as a matter of law when summary judgment evidence demonstrated a bona fide controversy regarding the need for back surgery and the carrier relied on a report that surgery was not necessary);

*Ramirez v. Transcontinental Ins. Co.,* 881 S.W.2d 818, 826 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (holding that an insurer had conclusively established a reasonable basis for denying a claim when it relied on an expert's opinion, even though another expert had expressed a conflicting opinion).

**54.** *See Muniz v. State Farm Lloyds,* 974 S.W.2d 229, 233 (Tex.App.—San Antonio 1998, no pet. h.) (finding that insurer had reasonable basis for denying claim served as *res judicata* to all claims, common law and statutory, predicated on good faith and on liability becoming reasonably clear and also to any claim that the insurer had engaged in unfair trade practices in forcing plaintiffs to sue to recover).

**55.** *See Higginbotham v. State Farm Mutual Auto. Ins. Co.,* 103 F.3d 456 (5th Cir.1997) (under Texas law, insurer which was found not to have acted in bad faith in denying insured's claims could not be held liable under either the Insurance Code or the DTPA since those extra-contractual tort claims required the same predicate for recovery as bad faith causes of action). *Id.* at 460 (citations omitted).

**56.** *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444–45 (Tex.1995) (evidence of defendant's negligence and the resulting property damage cannot alone support the mental anguish damages); *City of Tyler v. Likes,* 962 S.W.2d 489, 495 (Tex.1997) (mental anguish damages are recoverable for some common

580

case authority, that plaintiffs in this case are entitled to mental anguish damages based on their breach of contract claim.[57] Thus, plaintiffs' request for mental anguish damages fails as a matter of law.

**Motion # 2:** Whether the Avilas have established a *prima facie* case of common law and statutory fraud (or misrepresentation) against State Farm? [58]

According to the third amended complaint,[59] the Avilas base their common law and statutory fraud claims on the theory that State Farm breached its duty to disclose when it failed to inform them, at the time it sold them the homeowners policy at issue in this case, of its "policy and belief" that plumbing leaks to plaintiffs' dwelling were not covered under the policy. Plaintiffs claim that despite State Farm's alleged "policy and belief" of no coverage, it continued to charge plaintiffs premiums for "non-existent" coverage of plumbing leak damage to their home.

 The elements of common law fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.[60] In order for plaintiffs to prevail, they must satisfy all elements of the tort.[61] "Fraud is never presumed, and when it is alleged, the facts sustaining it must be clearly shown." [62] Plaintiffs must show that each representation complained of concerned a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation.[63] In this case, plaintiffs claim that State Farm's silence about its belief of no coverage constituted a false representation actionable under fraud. The Court disagrees.

 A failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary relationship exists between the parties. Because plaintiffs have failed to bring forth evidence that there was a fiduciary or confidential

law torts that generally involve intentional or malicious conduct, such as libel and battery; damages for mental anguish *not* recoverable for damages suffered by owner of home to her real and personal property).

57. *See Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex.1998) (mental anguish damages were *not* recoverable under a breach of contract cause of action (citation omitted)).

58. State Farm also seeks summary judgment on plaintiffs' request for punitive damages. Since punitive damages in this case can only be awarded if intentional fraudulent conduct has been established, the Court will address punitive damages in relation to plaintiffs' fraud claims as set forth in Motion # 2.

59. Plaintiffs in their response to defendant's summary judgment on fraud have expressly disavowed their claim of any fraud arising out of the overcharge of premiums (docket no. 198 at ¶ 3). Plaintiffs base their claim on State Farm's alleged "fraudulent failure to disclose pertinent information each year since 1990 before selling Plaintiffs their 'easy to read' HO–B policy." (*Id.*). To the extent that plaintiffs now attempt to plead new fraudulent claims beyond the four year statute of limitations applicable to such actions, the Court dismisses them as time-barred.

60. *Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998) (citations omitted).

61. *Stephanz v. Laird*, 846 S.W.2d 895, 902 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

62. *Id.*

63. *Id.*

relationship between the parties or that State Farm was required by law [64] to disclose its "belief or opinion," the Court cannot conclude that State Farm had an affirmative duty to disclose. Under Texas law, an insurance agent has no duty to explain policy terms, and the insured has a duty to read his insurance policy and is bound by its terms even if they were not fully explained.[65] Further, absent some *specific misrepresentation* of the terms of coverage by an insurer, an insured's mistaken belief that he is obtaining coverage under certain contingencies, which are not in fact covered by the policy, is not grounds for a misrepresentation claim.[66] In this case, State Farm's alleged failure to disclose its belief or opinion concerning policy coverage at the time plaintiffs obtained coverage (*i.e.*, that foundation damage was not covered) is immaterial to this case based on the *Balandran* decision which inter-

prets the policy as providing coverage for foundation damage caused by underground plumbing leaks. Thus, there was no misrepresentation of policy terms. Moreover, any representation by State Farm on its belief or opinion regarding policy coverage does not constitute a material fact; and thus, it is not actionable fraud.[67] Finally, the Court is not persuaded that the Insurance Bulletin issued in 1997 (four years after State Farm sold the policy at issue to plaintiffs) rejecting the Fifth Circuit's decision in *Sharp* constitutes *prima facie* evidence of fraud in this case.[68] Having reached this conclusion, the Court need not consider State Farm's additional arguments supporting its position that common law and statutory claims of fraud must be rejected.[69] Because plaintiffs have failed to meet their burden of establishing a *prima facie* case of common law and statuto-

64. *See* Tex. Ins. Code Ann. art. 21.21 § 4(11)(d) listing as misrepresentation of an insurance policy: "failing to disclose any matter *required by law* to be disclosed, including a failure to make disclosure in accordance with another provision of this code (emphasis added);" and DTPA, Tex. Bus. Com. Code Ann. § 17.46(23) listing as an unlawful deceptive practice: "the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

65. *Frith v. Guardian Life Ins. Co.*, 9 F.Supp.2d 744, 745 (S.D.Tex.1998); *Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F.Supp. 480, 485 (S.D.Tex.1994), *aff'd*, 66 F.3d 319 (5th Cir.1995); *Heritage Manor of Blaylock Properties, Inc., v. Petersson*, 677 S.W.2d 689, 691 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

66. *Burton*, 869 F.Supp. at 485 (citations omitted).

67. *Id.; see also Fossier v. Morgan*, 474 S.W.2d 801, 803–04 (Tex. Civ. App—Houston [1st Dist.] 1971, no writ); *Ryan v. Collins*, 496

S.W.2d 205, 210 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

68. The Insurance Bulletin makes no explicit reference to State Farm's alleged practice of overcharging premiums for "non-existent" coverage. In fact, the Bulletin contains language that buttresses State Farm's position in this case: "Insurers have interpreted the HO–B policy (both before 1990 and since 1990) to provide coverage for damage to foundations resulting from accidental discharge because *they have paid such claims.* Some of the larger insurers have recently indicated to the Department that they have always paid claims for damage resulting from accidental discharge of water, even when settling and cracking of the foundation was involved, and that they continue to pay these types of claims." *See* Commissioner's Bulletin No. B–0032–97 at 3.

69. To the extent that any of the Avilas' statutory or common law fraud claims are based on the alleged misrepresentations of State Farm and/or its agents to the Texas Department of Insurance, the Court finds that summary judgment in favor of State Farm is also appropriate.

ry fraud, their request for punitive damages is *denied*.[70]

**Motion # 3:** Whether the Avilas' breach of contract claim is barred by limitations?

 State Farm argues that plaintiffs' breach of contract claim is barred by the applicable statute of limitations.[71] The Court disagrees. The statute of limitations that governs this cause of action is "two years and one day after the cause of action accrues." [72] Texas courts have determined that a cause of action accrues when facts come into existence which give a claimant the right to seek a remedy in the courts. In turn, the right to seek a remedy arises when a wrongful act causes some legal injury.[73] The uncontroverted evidence shows that plaintiffs reported to State Farm their claim for foundation damage made the basis of this suit on December 27, 1993.[74] State Farm has failed to present evidence that the December 27, 1993 claim for foundation damage

allegedly caused by a plumbing leak is the same as plaintiffs' previous claim made on April 5, 1993 for 'storm damage.[75] For example, the evidence shows that State Farm gave separate claim numbers to both of these claims. State Farm's documentation of the December 27, 1993 claim, including its investigation and the independent experts' reports, makes no mention of the April 5, 1993 claim.[76] Moreover, State Farm has failed to adduce competent summary judgment evidence in support of the purported argument that its May 24, 1994 denial was a renewal of its earlier denial dated April 12, 1993. Furthermore, if the only foundation damage for which State Farm would provide coverage under the policy was that caused by plumbing leaks,[77] plaintiffs' legal injury *accrued* on May 24, 1994, when State Farm denied their claim by finding that the foundation damage reported on December 27, 1993, was not caused by a plumbing leak.[78] Be-

**70.** *See Moriel,* 879 S.W.2d at 18 (plaintiffs may not recover punitive damages merely because the insurer has breached its duty of good faith and fair dealing. Instead, " '[o]nly when accompanied by malicious, intentional, *fraudulent*, or grossly negligent conduct does bad faith justify punitive damages.' ") (emphasis added); *Simmons,* 963 S.W.2d at 47.

**71.** A defendant, such as State Farm, who moves for summary judgment based on the affirmative defense of the expiration of the statute of limitations, assumes the burden of showing that as a matter of law the suit is barred. *See Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

**72.** Docket no. 193 at Exhibit B—copy of HO–B policy (7/92), (§ 11 at 8).

**73.** *See Howard v. Fiesta Texas Show Park,* 980 S.W.2d 716, No. 04–97–00921–CV, at *1–2, (Tex.App.—San Antonio, pet. denied) (personal injury case); and authorities cited by State Farm in its motion (docket no. 193 at 2 fn. 1).

**74.** Docket no. 179, Exhibits B & C.

**75.** The earlier claim made in connection *to storm damage* was denied on April 12, 1993 on the basis that roof damage caused by cracking or settling was not a covered peril under the policy. *See* docket no. 193, Exhibits E & E–1.

**76.** The Court notes that the April 5, 1993 claim was made under the previous homeowners policy not at issue in this case because the effective date of the homeowners policy made the basis of this lawsuit became effective on September 1, 1993.

**77.** *See* State Farm's statement made in its motion for partial summary judgment (docket no. 179 at 3 fn.2): "Under the homeowners policy at issue in this suit, damage to a foundation is excluded pursuant to exclusion (h) unless the damage is caused by a plumbing leak. If, in fact, the damage is caused by a plumbing leak, the homeowners policy would cover such damage."

**78.** *See* Docket no. 193, Exhibit B, at 8: HO–B's statute of limitations provision states "[n]o suit or action can be brought unless the policy provisions have been complied with."

cause the Court finds that plaintiffs' lawsuit was timely filed, State Farm's motion for summary judgment on plaintiffs' breach of contract claim is denied.[79] Accordingly, the Court hereby vacates its previous Order (docket no. 126) and reinstates plaintiffs' breach of contract claim.

### Defendant's Motion for Reconsideration Of Order Denying Motion for Sanctions

■ State Farm has filed a motion for reconsideration[80] of this Court's Order[81] denying its request for sanctions based on plaintiffs' alleged spoliation of material evidence. State Farm bases its motion for reconsideration on the arguments previously raised in its original motion for sanctions (docket no. 114). In sum, State Farm alleges that plaintiffs intentionally disturbed the soil around the foundation of their home to impede State Farm's expert's efforts in determining the cause of the alleged damages. In disposing of this motion, the Court relies on the affidavit submitted by State Farm's expert, Mr. Reaves, in which he states that "[d]espite Plaintiffs' attempts to obstruct our ability to obtain exterior elevations, we were able to dig through the topsoil and acquire elevations in the disputed area of the yard."[82] In this regard, the Court cannot conclude that State Farm was prejudiced by plaintiffs' alleged actions or that plaintiffs intentionally obstructed State Farm's efforts of obtaining relevant evidence. Accordingly, after reviewing the evidence on record, the arguments raised by counsel and the applicable case authority, the Court is of the opinion that State Farm's motion for reconsideration should be *denied*.[83] Part of the relief that State Farm requests in its motion for reconsideration is an order from the Court that precludes plaintiffs from challenging the elevations obtained by Mr. Reaves. Plaintiffs assert in their response[84] that they do not plan to attack those elevations at the time of trial. The Court will hold plaintiffs to that statement of their position at trial.

### V. CONCLUSION

It is therefore **ORDERED** that defendant's motion for partial summary judgment (docket no. 179) is **GRANTED** with respect to plaintiffs' causes of action grounded in common law and statutory duties of good faith and fair dealing. It is also **ORDERED** that defendant's motion for summary judgment on fraud (docket no. 178) is **GRANTED** because plaintiffs have failed to allege facts sufficient to entitle them to relief such that there is no genuine issue of material fact under the applicable legal standards. It is further **ORDERED** that defendant's motion for summary judgment based on its affirmative defense of limitations (docket no. 193) is **DENIED**. It is also **ORDERED** that Defendant's motion for reconsideration of the Court's Order denying sanctions (docket no. 177) and all relief requested therein are **DENIED**. It is finally **ORDERED**

---

79. Plaintiffs have requested that some of the summary judgment evidence attached to plaintiffs' response (docket no. 206), Exhibits B–1 & B–2, should be sealed (docket no. 214). State Farm has not objected. Therefore, plaintiffs' request is *granted* and Exhibits B–1 and B–2, attached to docket no. 206, shall be sealed.

80. Docket no. 177.

81. Docket no. 134.

82. Docket no. 177 at Exhibit A.

83. Although the Court is denying sanctions, plaintiffs' knowledge of and actions in adding or regrading lawn soil may be appropriate areas for examination/cross-examination at trial.

84. Docket no. 201 at ¶ 3.

that the portion of defendant's reply to its motion for partial summary judgment (docket no. 207 at 6 fn. 14) which requests that Mr. Linehan's affidavit be stricken is **DENIED**; and plaintiffs' request (docket no. 214) that Exhibits B–1 and B–2 attached to docket no. 206 be sealed is **GRANTED**.

Plaintiffs' breach of contract claim and their pleaded cause of action for violations of Art. 21.55 of the Texas Insurance Code will proceed to trial. The Court in entering this Order **REINSTATES** plaintiffs' breach of contract claim and **VACATES** the Court's Order entered on July 9, 1997 (docket no. 126).