**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-50725.

James B. SHARP;  Brenda Sharp, Plaintiffs-Appellants,

v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, et al.,
Defendants,

State Farm Fire and Casualty Insurance Company, Defendant-
Appellee.

June 30, 1997.

Appeal from the United States District Court for the Western
District of Texas.

Before JOLLY, DUHÉ and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

State Farm denied the Sharps' claim for structural and
cosmetic damage to their house that resulted from a foundation
shift, which was itself caused by a plumbing leak beneath the
house.  We are called upon to determine whether the standardized
Texas homeowner's policy provides coverage.  The district court
determined that such damage was not covered by the policy, and
granted State Farm's motion for summary judgment.  We affirm.

I

James and Brenda Sharp are the holders of a homeowner's
insurance policy issued by State Farm;  the Sharps' policy is a
standardized state contract:  the Texas Standard Homeowners

1

Policy—Form B. In September 1993, the Sharps discovered that foundation movement had caused extensive foundation, structural and cosmetic damage to their home. The Sharps believe that the foundation shift was caused by water leaking from deteriorated sub-surface plumbing beneath their home.

The Sharps notified their insurance agent of their claim for damages to their house. The Sharps did not file a claim for damage to personal property, nor have they alleged that they suffered any loss beyond the structural and cosmetic damage to the house itself. Apparently, State Farm initially paid the cost of accessing the plumbing system to correct the leak. However, State Farm ultimately determined that the claim was not covered, and denied payment.

The Sharps filed suit in Texas state court. State Farm removed the case to federal district court on the basis of diversity of citizenship. State Farm subsequently filed a motion for summary judgment on the ground that the policy did not cover the Sharps' claim for foundation damage. For purposes of the summary judgment motion only, the parties assumed that leaking plumbing caused the foundation shift and resulting damage to the Sharps' house. The district court granted the motion for summary judgment, and this appeal followed.

## II

### A

Texas law applies to our review of the district court's

determination that the Sharps' policy did not afford coverage for their claim. We review the district court's application of Texas law concerning insurance contract interpretation *de novo*. *Farm Credit Bank of Texas v. Guidry,* 110 F.3d 1147, 1149 (5th Cir.1997).

Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Industries, Inc.,* 907 S.W.2d 517, 520 (Tex.1995). It is well-established that ambiguities in insurance contracts are to be strictly construed against the insurer. *Puckett v. U.S. Fire Insurance Co.,* 678 S.W.2d 936, 938 (Tex.1984). However, this rule of strict construction applies *only* if the contract is determined to be ambiguous.

Whether the contract is ambiguous is a question of law for the court to decide. *National Union Fire Ins. Co.,* 907 S.W.2d at 520 (*citing Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). The fact that the parties disagree as to coverage does not create an ambiguity, nor may extrinsic evidence be admitted for the purpose of creating an ambiguity. *Id.* As in all contract cases, the court looks first to the language of the contract itself, and "[w]hen there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Puckett,* 678 S.W.2d at 938. Accordingly, we now turn to the policy itself.

B

3

The Sharps' policy is divided into two separate sections: "Coverage A," which covers damage to the dwelling itself, and "Coverage B," which covers damage to personal property. Coverage A covers "all risks" to the dwelling unless specifically excluded in the Exclusions section. Coverage B covers only personal property losses caused by certain enumerated "perils," again unless those losses are specifically excluded in the Exclusions section. The list of covered perils under Coverage B, the *personal property* coverage section (listed in full in the Appendix to this opinion), specifically includes plumbing leaks:

> Accidental Discharge, Leakage, or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance.

> A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

> Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

The separate Exclusions section, which generally applies to *both* the dwelling coverage and the personal property coverage, enumerates eleven specific types of losses that are not covered.

Exclusion "h," which State Farm argues completely precludes the Sharps' claim, states:

> We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

4

> We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

The Sharps seek compensation for structural and cosmetic damage to their house, which is indisputably covered under "Coverage A (Dwelling)." The Sharps have not filed a claim for damage to personal property, nor alleged that they suffered any such damage. On its face, Exclusion "h" bars coverage of the Sharps' claim. The only substantial issue in this appeal, therefore, is whether any interplay between Exclusion "h" and the "accidental discharge" peril could permit coverage of this claim solely for damage to the Sharps' house.[1]

### III

### A

The Sharps' principal argument to the district court and on appeal is that the text describing the "accidental discharge" peril under Coverage B (Personal Property) somehow overrides the specific exclusion of losses to the dwelling "caused by settling, cracking,

---

[1] The Sharps advanced several other arguments in support of their claim that their foundation damage is covered. The Sharps argued: (1) that State Farm should be estopped from denying coverage, because State Farm paid them several thousand dollars to access the plumbing leak and correct it; (2) that the structural damage to their house is a covered "ensuing loss" under the exclusion against loss caused by "inherent vice, wear, and tear or deterioration"; and (3) that the damage was, in effect, caused by a "minor" earth movement and is therefore covered because the policy exclusion of "loss caused by earthquake, landslide, or earth movement" refers to "abnormally large movements." We find that the district court correctly rejected these arguments, and we need not address them further.

5

bulging, shrinkage or expansion of foundations ..."

We are sympathetic to the Sharps' situation, but we cannot agree that text specifically included in Coverage B, which applies only to personal property, may be imported into Coverage A, which applies to the dwelling or house, in order to create coverage for a loss that does not involve personal property damage. The Sharps' policy clearly and unambiguously divides dwelling losses and personal property losses into two separate "coverages." It therefore would appear to be nonsensical, and a rejection of the obvious structure of the policy, to reach into text that applies solely to Coverage B (Personal Property) to determine the extent of coverage provided under Coverage A (Dwelling).

B

Nevertheless, the Sharps insist that the final sentence of the "accidental discharge peril," which reads "Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to this peril," applies to *both* Coverage A (Dwelling) and Coverage B (Personal Property), even though it is found *only* in Coverage B. The Sharps argue that this sentence overrides Exclusion "h" in all cases where *any* loss may be attributable to a plumbing leak.

As support for this assertion, the Sharps argue that the history of the "accidental discharge" peril indicates that it is *supposed to* permit coverage in cases like theirs, and that it clearly did so before a 1990 revision to the standardized policy.

6

The Sharps insist that the committee charged with revising the forms was not authorized to restrict coverage in any significant way, and therefore the current policy must not be read to restrict coverage that existed under the prior policy.

Yet even if we assume, as the Sharps assert, that the prior version of the Texas Homeowner's Policy—Form B provided coverage for their claim, that fact cannot alter our view of the current policy that constitutes the contract between State Farm and the Sharps. As a form of extrinsic evidence, the prior version of the standardized policy is not relevant *unless the current policy is found to be ambiguous;* the Sharps may not point to the revision process to *create* an ambiguity. *See National Union Fire Ins. Co.,* 907 S.W.2d at 520 ("[o]nly where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument" (internal citation omitted)). Because there is no such predicate ambiguity in this contract, the Sharps gain nothing from this argument.

We also must reject the Sharps' argument that we are bound by a statement by the Texas Department of Insurance (the "Department") that the "current policy language in these forms is ambiguous and unclear as to coverage for the tear out and replacement of building or land in the event of accidental discharge or leakage of water ..." 20 Tex. Reg. 10398, 10399 (Dec. 8, 1995). First, we note that

7

the statement describes an ambiguity in the extent of "tear out and replace" coverage, not an ambiguity concerning the effect of the sentence eliminating Exclusion "h" from the "accidental discharge" peril.  As such, the Department's statement does not help the Sharps because they seek to be compensated for cosmetic and structural damage caused by the leak, rather than reimbursement for the cost of accessing the leak in order to repair it.[2]  Second, although the Sharps repeatedly refer to this statement as contained in a "final order," the document in question does not constitute a binding adjudication by a state agency:  it is simply a notice that the Department has adopted certain endorsements that it believes are clearer than the standardized policy.

Unless we first find that the policy is ambiguous, our duty is to hold the parties to the plain terms of the contract to which they have agreed, and that duty cannot be overridden by the possibility that the revision committee improperly eliminated coverage for this type of claim,[3] nor by the Department's post-hoc

_____

The parties have provided no indication that the Sharps' claim seeks coverage for the necessary expenses of accessing the plumbing leak.  We do not address the question whether "tear out and replace" costs could be sought under Coverage B (Personal Property) where there is a threat of personal property damage, but no actual damage sustained.

*Amicus curiae* argues that State Farm should be estopped from denying coverage because a State Farm representative served on the revision committee.  It is well-established under Texas law that insurance coverage may not be created by estoppel where none exists under the plain terms of the policy.  *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602-3 (Tex.1988) (*citing Washington Nat.*

8

suggestion that the "tear out and replace" provision of the "accidental discharge" peril to personal property is confusing. As discussed above, under the plain terms of the policy, the Sharps' claim is for structural and cosmetic damage to their house only, and therefore falls under Coverage A (Dwelling), and not under Coverage B (Personal Property). Coverage B, in its entirety, is simply inapplicable to the Sharps' claim.

C

Thus, examining the plain terms of the Sharps' policy, we must reject the argument that the sentence

> Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril

in Coverage B (Personal Property) affects Coverage A (Dwelling) in any way. The Exclusions section indicates that all of the exclusions apply to *both* Coverage A and Coverage B. Consequently, in order to invalidate any exclusion from a particular type of peril, the policy must so state within the language of the "Coverage," either A or B, to which the exclusion is to be made inapplicable. That is exactly what this policy accomplishes: Exclusion "h" is made inapplicable to the "accidental discharge" peril under Coverage B (Personal Property), but not under Coverage

---

*Ins. Co. v. Craddock,* 130 Tex. 251, 109 S.W.2d 165 (1937)). Any disagreement between the Texas Department of Insurance and the 1990 revision committee concerning the manner in which the committee fulfilled its assigned duties is a dispute that must be adjudicated in a different forum.

A (Dwelling).

If Exclusion "h," or any other exclusion, were intended jointly to be inapplicable under both Coverage A (Dwelling) and Coverage B (Personal Property) in "accidental discharge" cases, the structure of the policy suggests that such a limitation would be found within the Exclusions section itself, rather than within only one of the "Coverage" sections. We note that several of the individual exclusions contain explicit limitations within their text. More significantly, the entire Exclusions section begins with the observation that none of the exclusions under Arabic numeral "1" apply to "ensuing loss caused by fire, smoke or explosion." We would expect to see the same treatment if Exclusion "h" were to be made inapplicable in "accidental discharge" cases under *both* Coverage A and Coverage B—rather than only under Coverage B where it is, in fact, found.

The Sharps and *amicus curiae* argue that the sentence eliminating Exclusion "h" under the "accidental discharge" peril to personal property cannot reasonably apply only to cases of personal property damage because Exclusion "h" itself addresses only "dwelling" damage. The Sharps argue that rendering the foundation loss exclusion inapplicable to the "accidental discharge" peril would serve no purpose if the terms of the accidental discharge peril applied only to personal property. We disagree. The import of rendering certain exclusions inapplicable in cases of

10

"accidental discharge, leakage or overflow of water or steam" is to benefit the insured by avoiding disputes over causation in certain personal property losses. Exclusion "h" only addresses "dwelling" damage, but the dwelling damage in question can be a cause of personal property damage.

Leakage or overflow of water may often combine with or lead to other causes of damage to personal property. Leakage or overflow of water, for example, may cause electrical problems that damage electrical devices (otherwise excluded under Exclusion "a"), mechanical failures that damage machinery or appliances (Exclusion "e"), or structural cracking or settling that may itself damage personal property if the structure collapses or breaks apart (Exclusion "h"). Leakage or overflow of water, in most case, will itself be caused by inherent wear, tear or deterioration (otherwise excluded under Exclusion "f").

Eliminating these exclusions with respect to the "accidental discharge" peril to personal property prevents needless litigation in the large number of mixed causation cases where the underlying source of the problem is a typical leak or overflow of water from a plumbing, heating or air conditioning system. This conclusion is confirmed by the fact that the three exclusions *not* eliminated under the "accidental discharge" peril to personal property—Exclusions "i," "j," and "k"—involve cases where the discharge or leak is caused either by a natural catastrophe (flood,

11

earthquake or landslide) or by the neglect of the insured (failure to take reasonable precautions to protect against frozen pipes).

IV

Because we conclude that the policy that State Farm issued to the Sharps unambiguously excludes coverage for damage to their house that results from a foundation shift caused by a sub-surface plumbing leak, we affirm the district court's decision granting summary judgment to State Farm on the Sharps' contractual claim. We also affirm summary judgment on the claim for breach of duty of good faith and fair dealing. State Farm validly rejected the Sharps' claim for coverage, and did not thereby violate any common-law or statutory duty owed to the Sharps.[4]

AFFIRMED.

APPENDIX

TEXAS HOMEOWNERS POLICY—FORM B

(in relevant part)

SECTION I PERILS INSURED AGAINST

COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property)

---

Additionally, all pending motions concerning the briefing of this appeal are hereby denied.

12

caused by a peril listed below, unless the less is excluded in Section I Exclusions.

1. Fire and Lightning.

2. Sudden and Accidental Damage from Smoke.

3. Windstorm, Hurricane and Hail.

4. Explosion.

5. Aircraft and Vehicles.

6. Vandalism and Malicious Mischief.

7. Riot and Civil Commotion.

8. Collapse of Building or any part of the building.

9. Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating, or air conditioning system or household appliance. A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped. Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. Falling Objects. This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. Freezing of household appliances.

12. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

SECTION I EXCLUSIONS

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

c. We do not cover loss caused by windstorm, hurricane, or hail to: (1) cloth awnings, greenhouses ... (2) radio and television towers ... (3) personal property contained in a building unless direct force of wind or hail ...

d. We do not cover loss of the following property by theft ...

e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

f. We do not cover loss caused by: (1) inherent vice, wear and tear or deterioration. (2) rust, rot, mold or other fungi. (3) dampness of atmosphere, extremes of temperature. (4) contamination. (5) vermin, termites, moths or other insects. We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

g. We do not cover loss caused by animals or birds owned or kept by an *insured* or occupant of the *residence premises.* We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

h. We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools. We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

i. We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow or streams or other bodies of water or spray from any of these whether or not driven by wind. We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

j. We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to: (1) maintain heat in the building; or (2) shut off the water supply and drain plumbing, heating and air

14

conditioning systems of water.

k. We do not cover loss caused by earthquake, landslide or earth movement.

2. GOVERNMENTAL ACTION. We do not cover loss caused by the destruction of property by order of governmental authority [unless to prevent spread of an otherwise covered fire].

3. BUILDING LAWS. We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

4. WAR DAMAGE. We do not cover loss resulting directly or indirectly from war....

5. NUCLEAR DAMAGE. We do not cover loss resulting directly or indirectly from nuclear reaction ...