TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00013-CV







Gulf Metals Industries, Inc., Gulf Reduction Corporation, and Gulf Reduction
Corporation as a Successor to Southern Zinc Company, Appellants


v.



Chicago Insurance Company, Interstate Fire & Casualty Company, Delta Lloyds
Insurance Company, First State Insurance Company, Insurance Company of 

North America, Continental Casualty Company, Transcontinental Insurance

Company, CNA Lloyds of Texas, Transportation Insurance Company, 

Fidelity & Casualty Insurance Company of New York and

Glen Falls Insurance Company, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 96-04673A, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING 







DISSENTING OPINION






 I agree that the majority's interpretation of the phrase "sudden and accidental" in
the qualified pollution exclusion is eminently reasonable, perhaps more reasonable than the
insured's definition. Indeed, I would have joined the majority had this opinion been handed down
before the supreme court issued its decision in Balandran v. Safeco Insurance Co. of America, 972
S.W.2d 738 (Tex. 1998). Because I find that Balandran compels a finding that the insured's
reading of "sudden and accidental" is also reasonable, I would hold that the trial court erred in
granting summary judgment in favor of CIC. (1) I respectfully dissent.


Significance of Balandran

 Balandran involved a simple issue: whether a standard homeowner's policy
covered damage to a foundation caused by an underground plumbing leak. One year earlier, the
Fifth Circuit had addressed the identical question and held that under its reading of Texas law the
policy provision unambiguously excluded damage to a foundation caused by a plumbing leak. See
Sharp v. State Farm Fire & Cas. Ins. Co., 115 F.3d 1258 (5th Cir. 1997). The court held that
the insured's interpretation was not reasonable; therefore, the exclusion was unambiguous, and
the insured was not entitled to the benefit of the ambiguity. See id. at 1262-63.

 In Balandran the supreme court examined the same provision and reached a
different result, essentially holding that the Fifth Circuit misapplied Texas law in Sharp. 
Furthermore, the court gave a generous reading of what can be considered a "reasonable
interpretation" of a coverage exclusion by an insured. Courts "must adopt the construction . . .
urged by the insured as long as that construction is not unreasonable, even if the construction
urged by the insurer appears to be more reasonable or a more accurate reflection of the parties'
intent." Balandran, 972 S.W.2d at 741 (quoting National Union Fire Ins. Co. v. Hudson Energy
Co., 811 S.W.2d 552, 555 (Tex. 1991) (emphasis added)). The policy at issue in Balandran
excluded water damage to the dwelling; the insureds conceded that the damage to their foundation
fell under this exclusion unless language in the personal property section created an exception to
the exclusion when the structural damage resulted from a plumbing leak. The exclusion repeal
that the insureds relied on covered personal property against accidental discharge or leakage or
overflow of water or steam from within a plumbing system. This part of the policy further
provided that "Exclusions 1.a through l.h under Section I Exclusions do not apply to loss caused
by this peril." Exclusion 1.h excluded structural damage resulting from a plumbing leak. The
Balandrans did not suffer any personal property loss, but relied on this sentence to argue that
exclusion 1.h did not apply to the loss damage to their home caused by a plumbing leak. The
insurer insisted, relying on the Fifth Circuit's earlier opinion in Sharp, that an exception found
in the personal property coverage section of the policy could not be used to avoid the exclusion
found in the dwelling coverage section. In that case, the circuit court had concluded:


We are sympathetic to the Sharps' situation, but we cannot agree that text
specifically included in Coverage B, which applies only to personal property, may
be imported into Coverage A, which applies to the dwelling or house, in order to
create coverage for a loss that does not involve personal property damage. The
Sharps' policy clearly and unambiguously divides dwelling losses and personal
property losses into two separate 'coverages.' It therefore would appear to be
nonsensical, and a rejection of the obvious structure of the policy, to reach into text
that applies solely to [personal property losses] to determine the extent of coverage
under [the dwelling section].



Sharp, 115 F.3d at 1262.

 To find the insured's interpretation "reasonable" and the policy provision
ambiguous, the supreme court in Balandran applied standard rules of contract construction: (1)
insurance contracts are subject to the same rules of construction as other contracts, (2) the primary
goal is to give effect to the written expression of the parties intent, and (3) the court will strive to
give meaning to every sentence, clause and word to avoid rendering any portion inoperative. See
Balandran, 972 S.W.2d at 741. The court went on to add: "While parol evidence of the parties'
intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding
circumstances to determine whether an ambiguity exists." Id. (emphasis added, citations omitted). 
Furthermore, the court thought it proper to consider the circumstances surrounding the
promulgation of the policy form in determining whether the Balandrans' interpretation was
reasonable. Noting that insurers must use forms adopted by the State Board of Insurance, that an
earlier version of the form contained exclusion-repeal language that unquestionably applied to
dwelling coverage as well as personal property loss, and that the revision of the form was intended
to simplify the policy language and not to restrict any coverage previously available, the court
concluded that "the Balandrans' interpretation becomes even more reasonable when we consider
the circumstances surrounding the promulgation of this policy form." Id.

 Balandran recognizes that insurance is a regulated industry and that the regulatory
entity that promulgates mandatory policy forms is a silent party to a contract that must be written
on such forms. The surrounding circumstance evidence that the supreme court reviewed in
Balandran went to the intent of this silent party in promulgating the form. While parol evidence
of what an individual insured and an individual insurer intended is not admissible to create an
ambiguity, Balandran held that evidence of what the Department of Insurance intended in revising
the policy form could be considered in determining whether either party's interpretation of the
policy was reasonable.

 Gulf Metals asked the trial court to consider similar circumstances surrounding the
promulgation of the form at issue in this dispute. Gulf Metals argues that prior to the inclusion 
of the qualified polluter's exclusion clause in liability insurance policies, these policies clearly
covered the gradual but unintentional release of contamination. It sought to discover and have the
court consider historical drafting and regulatory evidence concerning the adoption of the pollution
exclusion clause at issue. Gulf Metals argued that the circumstances surrounding the promulgation
of the pollution exclusion clause would reveal that the "sudden and accidental" language was not
meant to restrict then-existing coverage of unintentional pollution. CIC responded that the State
Board of Insurance, now the Department of Insurance, intended to ensure that occurrence-based
policies would not be construed to cover claims such as those presented here. Without the benefit
of Balandran, the trial court followed the mistaken view of the Fifth Circuit in Mustang Tractor
& Equipment Co. v. Liberty Mutual Insurance Co., 76 F.3d 89 (5th Cir. 1996), and refused to
consider surrounding circumstance evidence regarding the promulgation of the "sudden and
accidental" exception to the pollution exclusion to determine whether the insured's interpretation
was reasonable. Under Balandran, such evidence is admissible to determine ambiguity, which
exists when both parties' interpretations are reasonable. I would hold that the trial court in the
present case erred in granting summary judgment without considering this evidence of surrounding
circumstances.

 The majority points to footnote three as justification for ignoring this significant
rule of construction set forth in Balandran, and instead reaches back to the earlier language in
National Union Fire Insurance Co. v. CBI Industries, Inc., 907 S.W.2d 517 (Tex. 1995), stating
that the parties' interpretation of a contract can be considered only after the court has found the
contract to be ambiguous. Indeed, Balandran agrees that parol evidence of the parties' intent
cannot be considered unless the policy is first found to be ambiguous. See Balandran, 972 S.W.2d
at 741. However, Balandran specifically holds that surrounding circumstance evidence regarding
promulgation of the policy form is not "extrinsic evidence" and may be considered in determining
whether a party's interpretation of the policy is reasonable. As the dissent in Balandran points
out, this rule is at odds with the Fifth Circuit's holding in Sharp that the insured "may not point
to the revision process to create an ambiguity." See Balandran, 972 S.W.2d at 745 (Owen, J.,
dissenting) (quoting Sharp, 115 F.3d at 1262). In the present case, the majority follows the view
expressed by Justice Owen in the Balandran dissent and by the Fifth Circuit in Sharp, that
evidence of what the former policy form stated and the intent of those who revised its language
is extrinsic evidence that may not be considered until the court determines that an ambiguity exists
on the face of the policy. The apparent contradiction between footnote three and the holding that
"the contract may be read in light of the surrounding circumstances to determine whether an
ambiguity exists," 972 S.W.2d at 741, can be harmonized if we consider the regulated nature of
insurance contracts. Can Gulf Metals rely on representations allegedly made by the insurance
industry to the Department that the language "sudden and accidental" in the revised form would
not restrict existing coverage of unintentional pollution? I think Balandran holds that it may. (2) We
don't know whether the surrounding circumstance evidence here will make Gulf Metals'
interpretation of this pollution exclusion clause more reasonable or not because the trial court
refused to consider it. I would reverse the summary judgment and remand for the trial court to
read the present contract in light of such evidence.


"Sudden" Can Reasonably be Interpreted To Mean "Unexpected"

 I disagree with the majority's claim that dictionaries "provide no significant help
in determining whether a term has two reasonable meanings." It is true that courts must determine
the meaning of words in a particular context; I also agree that dictionaries alone provide an
inadequate test for ambiguity. However, dictionary definitions may provide guidance when the
context does not. Nothing about the phrase "sudden and accidental" requires "sudden" to contain
a temporal element. The context in which the phrase is used simply does not mandate such a
construction.

 When the majority asserts that "sudden" is never used in ordinary conversation
without a temporal aspect, what it is really saying is that "sudden" can never mean only
"unexpected." This notion is not supported by any dictionary usage, caselaw, or any other
authority. I believe that it is reasonable to read "sudden" to mean "unexpected." As the Georgia
Supreme Court observed:

[E]ven in its popular usage, "sudden" does not usually describe the duration of an
event, but rather its unexpectedness: a sudden storm, a sudden turn in the road,
sudden death. Even when used to describe the onset of an event, the word has an
elastic temporal connotation that varies with expectations: Suddenly, it's spring.



Claussen v. Aetna Cas. & Sur. Co., 380 S.E.2d 686, 688 (Ga. 1989). Accordingly, leading
dictionaries provide "unexpected" or "without previous notice" as primary definitions of
"sudden." (3) 

 In arriving at the conclusion that "sudden and accidental" cannot mean "unexpected
and unintended," the majority relies on the Fifth Circuit's opinion in Mustang Tractor &
Equipment Co. v. Liberty Mutual Insurance Co., 76 F.3d 89 (5th Cir. 1996). As the majority
observes, the Mustang Tractor court stated that "Texas courts agree that 'accidental' generally
describes an unforeseen or unexpected event . . . ." Id. at 92. The Fifth Circuit reasoned that the
insured's interpretation of "sudden" as meaning unexpected created a redundancy because
"accidental" already conveyed unexpected. Therefore, it concluded, "[t]o define sudden as
meaning only unexpected or unintended, and therefore a mere restatement of accidental, would
render the suddenness requirement mere surplusage." Id.

 The flaw in Mustang Tractor's reasoning is the court's assumption that "accidental"
means unforeseen or unexpected under Texas law, for which proposition the court cited Republic
National Life Insurance Co. v. Heyward, 536 S.W.2d 549, 554 (Tex. 1976). However, that case
is inapposite. (4) Texas courts generally interpret the word "accidental" to mean "unintended" in
the insurance context, (5) and cases from other jurisdictions support the view that "accidental" adds
an element of intent that is missing from "sudden" or "unexpected." See, e.g., Queen City
Farms, Inc. v. Central Nat'l Ins. Co., 882 P.2d 703, 721 (Wash. 1994) (citing New Castle County
v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1194 (3d Cir. 1991)). In addition, leading
dictionaries primarily define "accidental" as unintended, without an element of foreseeability. (6) 
While many also define "accident" as an unforeseeable occurrence, these definitions are often
secondary. (7) Finally, insurance policies often use words that have similar meanings, such as in the
qualified pollution exclusion where the words "discharge, dispersal, release or escape" are all used
to describe potentially polluting events. See New Castle County, 933 F.2d at 1194.

 As Gulf Metals points out in its brief, it is not redundant to describe an event as
both "unexpected" and "unintended," since the latter term describes subjective hopes or desires,
while the former addresses the more objective concept of what is foreseeable or foreseen. Thus,
winning a lottery jackpot could be described as unexpected but not unintended, while receiving
a speeding ticket for driving far above the posted speed limit would be unintended but probably
not unexpected. While the terms "sudden" and "accidental" can overlap to some degree, nothing
about the present context makes Gulf Metals' interpretation unreasonable; this is particularly so
in light of the well-settled rule that exceptions or limitations on liability are strictly construed
against the insurer and in favor of the insured. See National Union Fire Ins. Co. v. Hudson
Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); Ramsay v. Maryland Am. Gen. Ins. Co., 533
S.W.2d 344, 349 (Tex. 1976). Reading "sudden and accidental" to mean "unexpected and
unintended" is reasonable. Because Mustang Tractor's contrary conclusion rests upon a flawed
assumption, I believe the majority's reliance on that case to be misplaced.

 The redundancy relied upon by the Mustang Tractor court is created only if one
begins with the assumption that "accidental" necessarily connotes "unforeseen" in addition to its
natural meaning of "unintended." As discussed above, this interpretation is largely unsupported
by relevant Texas authority. Nor is "sudden" required to contain a temporal element by either
Texas caselaw or authoritative dictionaries. Thus, reading "sudden and accidental" to mean
unexpected and unintended is reasonable, and the ambiguous exception must be interpreted in
favor of the insured.

 In Balandran, the supreme court proclaimed that surrounding circumstances
evidence is admissible to determine whether an ambiguity exists. Balandran also sets a new and
generous standard as to what can be considered a "reasonable interpretation" of an exception to
a policy exclusion. Without the benefit of the supreme court's decision, the trial court granted
summary judgment against the insured, holding that Gulf Metals' interpretation of "sudden and
accidental" is unreasonable. I would reverse the summary judgment and remand the cause to the
trial court to allow further discovery of evidence that agents of the appellee insurance companies
represented to state insurance boards that the "sudden and accidental" exception to the pollution
exclusion would not eliminate coverage as long as the pollution was not expected or intended from
the standpoint of the insured.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Filed: May 13, 1999

Publish
1. Because Balandran had not been decided at the time of the summary judgment hearing, the
trial court did not have the benefit of the supreme court's most recent analysis.
2. In this regard I think the majority got it backwards when it held that "the 'surrounding
circumstances' that may be considered in determining ambiguity are those surrounding the making
of the contract, not those present when a regulatory body promulgates the form of the contract."
3. See Webster's Third New International Dictionary 2284 (Philip B. Gove ed., 1986) (defining
"sudden" as: "1a. happening without previous notice or with very brief notice; coming or
occurring unexpectedly: not seen or prepared for [usage examples omitted]"; The American
Heritage Dictionary of the English Language 1286 (William Morris ed., 1973) (defining "sudden"
as: "1. Happening without warning; unforeseen."); Black's Law Dictionary 1432 (6th ed. 1990)
(defining "sudden" as: "Happening without previous notice or with very brief notice; coming or
occurring unexpectedly; unforeseen; unprepared for."). Even in the Random House definition
quoted by the majority, a temporal element exists in only one of the three meanings provided. See
Random House Dictionary of the English Language 1900 (Stuart B. Flexner ed., 1987) (defining
"sudden" as "happening, coming, made, or done quickly, without warning, or unexpectedly")
(emphasis added).
4. Heyward held that whether a killing is "accidental" within the terms of a life insurance policy
is determined from the viewpoint of the insured, not the viewpoint of the one who does the killing;
the test is whether the insured should have reasonably anticipated that his conduct would bring
about his own death. See Heyward, 536 S.W.2d at 552-54. Heyward thus does not control the
definition of "accidental" as that word is used in the "sudden and accidental" exception to the
pollution exclusion.
5. See Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827-28 (Tex. 1997) (insured's
conduct not an "accident" for purposes of insurance policy because insured acted intentionally and
purposefully in copying photographs of plaintiff and showing them to friends); Argonaut Southwest
Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973) ("Where acts are voluntary and intentional
and the injury is the natural result of the act, the result was not caused by accident") (quoting
Thomason v. United States Fidelity & Guar. Co., 248 F.2d 417 (5th Cir. 1957)); Wessinger v.
Fire Ins. Exch., 949 S.W.2d 834, 837 (Tex. App.--Dallas 1997, no pet.) (if acts producing
alleged injuries were committed involuntarily and unintentionally, results of acts are accidental);
but see Mesa Operating Co. v. California Union Ins. Co., No. 5-96-986-CV, 1999 WL 42027 *5
(Tex. App.--Dallas Feb. 2, 1999, no pet. h.) ("The term "accidental" already encompasses the
concepts of being unexpected and unintended.") (citing Mustang Tractor, 76 F.3d at 92).
6. See Webster's Third New International Dictionary 11 (Philip B. Gove ed., 1986) (defining
"accidental" as: "2b. happening or ensuing without design, intent, or obvious motivation or
through inattention or carelessness <~ collision> <~ shooting> <~ loss>."); A Dictionary
of Modern Legal Usage 13 (Bryan A. Garner ed. 1995) ("In law, the usual distinction is that an
accident occurs without the willful purpose of the person who causes it.") (contrasting "accident"
with "mistake") (emphasis original).
7. See, e.g., The Random House Dictionary of the English Language 12 (Stuart B. Flexner ed.,
1987) (defining "accident" as: 1. an undesirable or unfortunate happening that occurs
unintentionally and usually results in harm, injury, damage, or loss; casualty; mishap; automobile
accidents. 2. Law such a happening resulting in injury that is in no way the fault of the injured
person for which compensation or indemnity is legally sought. 3. any event that happens
unexpectedly, without a deliberate plan or cause.").



 of the supreme court's most recent analysis.
2. In this regard I think the majority got it backwards when it held that "the 'surrounding
circumstances' that may be considered in determining ambiguity are those surrounding the making
of the contract, not those present when a regulatory body promulgates the form of the contract."
3. See Webster's Third New International Dictionary 2284 (Philip B. Gove ed., 1986) (defining
"sudden" as: "1a. happening without previous notice or with very brief notice; coming or
occurring unexpectedly: not seen or prepared for [usage examples omitted]"; The American
Heritage Dictionary of the English Language 1286 (William Morris ed., 1973) (defining "sudden"
as: "1. Happening without warning; unforeseen."); Black's Law Dictionary 1432 (6th ed. 1990)
(defining "sudden" as: "Happening without previous notice or with very brief notice; coming or
occurring unexpectedly; unforeseen; unprepared for."). Even in the Random House definition
quoted by the majority, a temporal element exists in only one of the three meanings provided. See
Random House Dictionary of the English Language 1900 (Stuart B. Flexner ed., 1987) (defining
"sudden" as "happening, coming, made, or done quickly, without warning, or unexpectedly")
(emphasis added).
4. Heyward held that whether a killing is "accidental" within the terms of a life insurance policy
is determined from the viewpoint of the insured, not the viewpoint of the one who does the killing;
the test is whether the insured should have reasonably anticipated that his conduct would bring
about his own death. See Heyward, 536 S.W.2d at 552-54. Heyward thus does not control the
definition of "accidental" as that word is used in the "sudden and accidental" exception to the
pollution exclusion.
5. See Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827-28 (Tex. 1997) (insured's
conduct not an "accident" for purposes of insurance policy because insured acted intentionally and
purposefully in copying photographs of plaintiff and showing them to friends); Argonaut Southwest
Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973) ("Where acts are voluntary and intentional
and the injury is the natural result of the act, the result was not caused by accident")