Revised May 15, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 99-50721**

**GERALD SCZEPANIK and JACQUELINE SCZEPANIK,**

**Plaintiffs-Appellants,**

**VERSUS**

**STATE FARM FIRE AND CASUALTY COMPANY,**

**Defendant-Appellee.**

Appeal from the United States District Court
for the Western District of Texas

April 27, 2000

Before KING, Chief Judge, and GARWOOD, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiffs Gerald and Jacqueline Sczepanik appeal the district court's order granting summary judgment in favor of defendant State Farm.  The district court held that State Farm was entitled to prevail as a matter of law because the homeowners policy issued by State Farm to the Sczepaniks unambiguously excludes coverage with respect to the Sczepaniks' claim that a plumbing leak caused foundation damage to their house.  Having reviewed this narrow

issue of contract interpretation de novo, we conclude that the controlling authorities from this Court and the Texas Supreme Court mandate a result in favor of the Sczepaniks.  We therefore vacate the district court's grant of summary judgment in favor of State Farm and remand for further proceedings.

## I.

The Sczepaniks filed this suit in state court after State Farm refused to pay their claim for damage to the foundation of their house, which the Sczepaniks claim was caused by water leaking from a broken sewer line under the foundation of the house.  The Sczepaniks' state court petition alleged breach of contract as well as breach of the duty to promptly investigate and pay their claim. State Farm removed the case to federal district court on the basis of diversity jurisdiction.  The disposition of this diversity action is governed by Texas insurance law.

State Farm defends on the ground that the policy issued to the Sczepaniks unambiguously excludes coverage for foundation damage, and the district court granted summary judgment in favor of State Farm on that ground.  The Sczepaniks contend that the policy exclusion relied upon by State Farm does not apply when the foundation damage is caused by an accidental discharge of water, such as the plumbing leak alleged here.

This is not the first time that this Court has been asked to

consider whether the standard policy language promulgated for homeowner policies by the Texas Insurance Commission includes or excludes coverage for foundation damage caused by a plumbing leak. In *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258 (5th Cir. 1997), this Court held that substantively identical policy provisions unambiguously exclude such coverage. Shortly there-after, the Texas Insurance Commissioner (who writes the policies) issued a bulletin "vigorously disagreeing with the *Sharp* decision." *See Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 739 (Tex. 1998) (citing Tex. Dep't of Ins. Bulletin B-0032-98 (Aug. 22, 1997)); *see also Douglas v. State Farm Lloyds*, 37 F. Supp.2d 532, 538-40 (S.D. Tex. 1999) (discussing the Texas Insurance Commissioner's reaction to *Sharp* and quoting at length from Bulletin B-0032-98). The following year, this Court was presented with the issue again in *Balandran v. Safeco Ins. Co.*, 129 F.3d 747 (5th Cir. 1997). In light of the Texas Insurance Commissioner's Bulletin and other post-*Sharp* developments, the panel in that case certified the recurrent coverage question to the Texas Supreme Court. *See id*. at 749. Eight months later, the Texas Supreme Court answered the certified question with a published opinion. *See Balandran*, 972 S.W.2d 738. The Texas Supreme Court held that the relevant provisions of the form policy were ambiguous on the coverage question presented. *See id*. at 741. Moreover, both the insured's argument that the policy covered foundation damage caused by a

3

plumbing leak and the insurer's argument that the policy excluded such coverage were considered to be reasonable interpretations of the ambiguous policy language. *See id*. at 741-43. The Texas Supreme Court then applied the Texas rule of law that ambiguity involving an exclusionary provision of an insurance policy must be resolved in favor of the insured's construction provided the construction is reasonable. *See id*. at 741, 743. Given its determination that the Balandran's construction was reasonable, the Texas Supreme Court held that the form policy provision excluding coverage for foundation damage does not apply when the loss is caused by an accidental discharge of water such as a plumbing leak. *See id*. at 743. This Court subsequently gave effect to the Texas Supreme Court's holding in *Balandran v. Safeco Ins. Co.*, 148 F.3d 487 (5th Cir. 1998).

## II.

The parties' arguments on appeal either rehash the contract construction issues litigated in the earlier cases for the purpose of establishing coverage or rely upon immaterial factual distinctions to argue that *Balandran* is inapplicable to the instant dispute. We will begin by examining the structure and relevant language of the policy issued to the Sczepaniks.

The Sczepaniks were issued Texas Dwelling Policy-Form 3 ("TDP Form 3"). The first page of the policy includes the heading

4

"COVERAGES." The COVERAGES section sets forth details about the covered locations or property under subheadings titled "COVERAGE A (DWELLING)," and "COVERAGE B (PERSONAL PROPERTY)." On the following page, the policy sets forth the heading "PERILS INSURED AGAINST." Under that heading, the policy contains the following relevant language:

> **Coverage A (Dwelling).** We insure against all risks of physical loss to the property described in Coverage A (Dwelling) unless the loss is excluded in General Exclusions.
>
> **Coverage B (Personal Property).** We insure for direct physical loss to the property described in Coverage B (Personal Property) caused by a peril listed below unless the loss is excluded in General Exclusions.

Immediately following this language there appears a list of enumerated perils, which includes the following:

> **9. Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.
>
> A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.
>
> <u>Exclusions 1.a. through 1.i. under General Exclusions do not apply to loss caused by this peril.</u>

(emphasis added).

The third page of the policy sets forth a number of exclusions under the heading "GENERAL EXCLUSIONS." The general exclusions provide, in relevant part:

5

1.   The following exclusions apply to loss to covered property:

    i.   We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage or expansion of foundations, walls, floors, ceiling, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

       We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

Piecing these provisions together, it is clear that exclusion 1.i generally excludes coverage for foundation and similar damage to the dwelling. The final sentence in the definition of peril 9, which is italicized for emphasis above, repeals or precludes the application of exclusion 1.i. when the loss is caused by the accidental discharge of water. For this reason, the italicized sentence is commonly referred to as the "exclusion repeal provision." *See*, *e.g.*, **Balandran**, 972 S.W.2d at 740. The basic contract interpretation question presented in this and similar cases is whether the underlined exclusion repeal provision, which follows the definition of peril 9, repeals the application of the foundation damage exclusion defined in exclusion 1.i with respect to claims made under *both* Coverage A (for damage to the dwelling) and Coverage B (for damage to personal property), *or* whether the exclusion repeal provision repeals the application of the foundation damage exclusion as to claims made under Coverage B

6

alone.

**III.**

State Farm seizes upon the fact that the exclusion repeal provision is textually located within the list of enumerated perils that fall under the heading "Coverage B (Personal Property)." Thus, viewed strictly as a matter of format or structure, the exclusion repeal provision is placed within and could be construed to apply only to claims for personal property damage under Coverage B. If the exclusion repeal provision is presumed not to apply to Coverage A, then the Sczepaniks' Coverage A claim for foundation damage to the dwelling is taken outside the coverage of the policy by exclusion 1.i.

State Farm's argument that the exclusion repeal provision applies exclusively to Coverage B is indistinguishable from the argument that was embraced in *Sharp* and then subsequently rejected by the Texas Supreme Court in *Balandran*. In *Sharp*, we interpreted identical policy language, and observed:

> the Sharps' policy clearly and unambiguously divides dwelling losses and personal property losses into two separate 'coverages.' It therefore would appear to be nonsensical and a rejection of the obvious structure of the policy, to reach into text that applies solely to Coverage B (Personal Property) to determine the extent of coverage provided under Coverage A (Dwelling).

*Sharp*, 115 F.3d at 1262.

Less than one month after *Sharp*, the Texas Supreme Court

7

issued a decision affirming a homeowner's recovery for damages to the foundation of the insured dwelling that were caused by a plumbing leak without discussing this Court's decision in *Sharp.* *See* ***State Farm Lloyds v. Nicolau***, 951 S.W.2d 444, 446 (Tex. 1997) ("The Nicolaus' homeowners policy, issued by State Farm Lloyds, generally excludes losses caused by 'inherent vice,' or by 'settling, cracking, bulging, shrinkage, or expansion of foundations.' Under an express exception, however, these exclusions do not apply to losses caused by an '[a]ccidental discharge, leakage or overflow of water' from within a plumbing system."). One month later, the Texas Insurance Commissioner issued Bulletin B-0032-98. The Commissioner's bulletin denounced ***Sharp*** as an incorrect interpretation of Texas law, advised insurers that the decision was not binding on Texas courts, and warned insurers that failure to pay claims for foundation damage to the dwelling caused by an accidental discharge of water could subject the insurer to liability or disciplinary proceedings under the Texas Insurance Code. *See* ***Douglas***, 37 F. Supp.2d at 538-39 (citing bulletin). When presented with the issue again, this Court certified the coverage question, asking whether the standard policy covered "damage to a dwelling caused by movement of its foundation that was caused by an underground plumbing leak." ***Balandran***, 129 F.3d at 749. The Texas Supreme Court answered that the policy should be construed to provide such coverage. ***Balandran***, 972

8

S.W.2d at 743.

The Sczepaniks' arguments on appeal are either drawn from or elaborate upon the reasoning used by the Texas Supreme Court in *Balandran* to reject the interpretation given identical provisions in this Court's opinion in *Sharp.* In *Balandran*, the Texas Supreme Court compared the comprehensive coverage for "all risks" or perils in Coverage A with the limited coverage for enumerated perils in Coverage B, implying that the broader coverage specified in Coverage A necessarily included coverage for the subset of enumerated perils specified in Coverage B. *See Balandran*, 972 S.W.2d at 740. The Texas Supreme Court further noted that the exclusion repeal provision is not, by its plain terms, limited to claims for personal property damage. Indeed, the provision states merely that the foundation damage exclusion does "not apply to loss" caused by a plumbing leak. *See id*. at 741. Finally, the Texas Supreme Court set forth historical and logical reasons explaining and justifying the placement of the exclusion repeal provision adjacent to the specific peril to which it pertained. *See Balandran*, 972 S.W.2d 741.

The Texas Supreme Court also relied heavily upon the rule of contract construction that disfavors an interpretation that renders part of the contract meaningless or inoperative. *See id*. at 741. The Texas Supreme Court recognized that the insurer's interpretation -- that the exclusion repeal provision repeals the

foundation damage exclusion as to personal property claims only --
would render that part of the exclusion repeal provision
meaningless. *See id.* This is so because the foundation damage
exclusion is textually limited to "loss under Coverage A
(Dwelling)." Moreover, the foundation damage exclusion does not
even potentially have any application to personal property
coverage. *See id.* at 741 (the foundation damage exclusion "can
never affect personal property losses"). As the Texas Supreme
Court pointed out in **Balandran**, the exclusion repeal provision
would be both meaningless and of no effect if it merely repealed
the application of an exclusion that was inapplicable in the first
place. *See id.* at 741. We are not at liberty to assess the
relative strength of the reasoning used in **Sharp** as compared to the
reasoning used in the Texas Supreme Court's disposition in
**Balandran.** To the contrary, the Texas Supreme Court has construed
identical policy provisions to provide coverage for foundation
damage to the dwelling when caused by an accidental discharge of
water such as a plumbing leak. Our task when sitting in diversity
is simply to apply that law. *See, e.g.,* **Shanks v. Allied Signal,
Inc.,** 169 F.3d 988, 993 (5th Cir. 1999).

State Farm attempts to avoid **Balandran** and breathe new life
into the argument rejected in **Sharp** with a single factual
distinction. State Farm argues that we are not bound by the Texas
Supreme Court's decision in **Balandran** because the policy at issue

10

in both *Sharp* and *Balandran* was Texas Homeowners Policy-Form B, or HO-B, while the Sczepaniks were issued Texas' Dwelling Policy-Form 3, or TDP Form 3. According to State Farm, HO-B is intended for use when the homeowner desires full coverage for both the dwelling and personal property, while TDP Form 3 is intended for use when the insured may want to select only certain types of coverage from a policy which contains a description of all possible coverages. State Farm argues that TDP Form 3 is in this respect rather like the Texas Personal Auto Policy, which permits an insured to select comprehensive protection, liability protection, or a combination of both. State Farm concedes that the relevant policy provisions in the two policies are substantively identical, but maintains that the difference permitting an election is significant because the Sczepaniks, who owned but did not reside at the insured property, purchased only Coverage A. State Farm then makes the further argument that, because the Sczepaniks did not purchase Coverage B, the exclusion repeal provision "is not part of the Sczepaniks' contract." Stated differently, State Farm wants the Court to judicially excise from the insurance agreement any portions that, in State Farm's judgment, apply strictly to Coverage B, which was not purchased. The district court essentially adopted this argument when granting summary judgment.

The problem with State Farm's argument attempting to distinguish *Balandran* is that it once again depends entirely upon

11

the premise that the exclusion repeal provision is unambiguously and exclusively part of Coverage B, and does not form any part of the coverage extended under Coverage A for damage to the dwelling. That exact proposition was rejected by the Texas Supreme Court in *Balandran*. Moreover, we have not found any authority that would permit this Court, sitting in diversity, to create a new contract for the parties by simply deciding which textual provisions the parties intended to apply to what coverages and then judicially excising the remaining portions. That premise holds particularly true when, as here, to do so would require that this Court reach a decision about which provisions form part of which coverages that is directly contrary to a recent decision interpreting identical provisions from the state's highest court. To conclude, State Farm relies upon the Sczepaniks' failure to purchase personal property coverage as a basis for distinguishing the case from *Balandran*. We conclude that that factual distinction is immaterial because the Texas Supreme Court has already held that identical policy language does not unambiguously limit the application of the exclusion repeal provision to personal property coverage.

For the foregoing reasons, we vacate the district court's summary judgment in favor of State Farm and remand for further proceedings consistent with this opinion. The parties' briefing suggests that there may be unresolved factual disputes concerning the actual cause of the damage to the Sczepaniks' house. We do

12

not, in this appeal from summary judgment on the contract interpretation issue, resolve whatever factual disputes may exist between the parties on that issue. Rather, we limit our holding to the issue presented, which is whether, assuming that the foundation damage was caused by an accidental discharge of water such as a plumbing leak, State Farm's policy excludes coverage as a matter of law. As set forth above, the decisions of the Texas Supreme Court and this Court in *Balandran* require that we answer that question in the negative.

## CONCLUSION

The summary judgment in favor of State Farm is VACATED and the cause REMANDED for further proceedings consistent with this opinion.